# EXHIBIT 9



# POLICE DEPARTMENT
### *City of Manassas Park*
329 Manassas Drive
Manassas Park, VA 20111
703-361-1136 • Fax 703-330-2517

*MARIO LUGO, COLONEL*
CHIEF OF POLICE

August 12, 2019

1st Lieutenant Regan Miller
329 Manassas Drive
Manassas Park, VA 20111

1st Lieutenant Miller:

I received a complaint concerning your conduct and performance as a supervisor. Specifically, it has been alleged that you failed to divulge pertinent information regarding an ongoing investigation by one of your officers on or about March 29, 2019.

Major Trevor Reinhart has been assigned to investigate this complaint and possible violations of the following Department General Orders and City Policy:

- 201, I, A, (1 & 2): Knowledge of Laws, Ordinances, Regulations, and Policies.
- 201, I, B (1): Abeyance of Laws, Ordinances, and Regulations
- 601, II, E (4): Reporting, investigation, and other paperwork
- 602, I, A: Situations that require an IBR

In addition, there are concerns regarding your conduct. Specifically, it has been alleged that you may have violated or misused the LINX (Law Enforcement Information Exchange) on or about July 7, 2019, which would be violation of the National Data Exchange Access Agreement and the following Department General Orders and City Policy:

- 201, V, R, (1 &2): Dissemination of Confidential Police Information.

Major Reinhart will be contacting you in the near future as part of the investigation. Upon completion of the investigation, I will advise you of the findings.

Once the investigation is completed, if there are any sustained findings that a violation of General Orders, City Policy, or state/local laws had occurred, disciplinary action could be taken, up to and including termination of your employment.

If you have any questions, please do not hesitate to contact Major Reinhart directly.

Sincerely,

Mario Lugo
Chief of Police

*Committed to Excellence*

| 109<br>Discipline,<br>Complaints, and<br>Commendation | **Manassas Park Police<br>General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Authe<br>Joh _. Evans, Ch. Police | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 1 of 24 |

**PURPOSE:**

To ensure the integrity of the Department by establishing procedures for the handling of complaints brought against members of the Department, publicly recognizing those members who have rendered exemplary service, and to take appropriate action where necessary.

Effective discipline is a positive process when its perceived purpose is to train or develop by instruction. Among the functions having an impact on discipline in the Department are selection, training, direction, supervision, and accountability. These elements are interdependent and a weakness in any one is damaging to effective discipline.

The procedures set forth in this directive ensure a prompt and thorough review, assessment, and when necessary, the investigation of incidents to commend exemplary service, exonerate the innocent, establish guilt, and facilitate suitable disciplinary action.

The administration and supervisors of the Department adhere as closely as possible to the guidelines of this order, which are based on the Law Enforcement Officers Procedural Guarantees in the Code of Virginia, Chapter 5, Section 9.1-500 through 9.1-507. However, nothing in this directive shall prohibit any officer from seeking any remedy afforded by the City.

**POLICY:**

The Department is committed to excellence. Part of that commitment rests in the Department's ability to fairly and impartially investigate and resolve complaints about its members and operations.

It is the policy of the Department that any member whose continued presence on the job is deemed to be a substantial and immediate threat to the welfare of the Department or the public, or who refuses to obey a lawful direct order from a superior officer, shall be immediately relieved from duty, pending an investigation of his actions.

It is the policy of the Department that all persons have the right to initiate a complaint concerning police services in general, or the behavior of any member. Citizens are entitled to a fair and thorough investigation of facts surrounding their complaint, as well as a timely response. A record of all complaints is maintained. Formal and informal complaints are investigated by either supervisory personnel or the internal affairs officer, depending on the nature of the allegation(s). Members of the Department are entitled to an impartial, objective and confidential investigation of the facts and to procedural guarantees mandated by law and Department directives.

It is the policy of the Department to receive, document and investigate when appropriate, any and all allegations of improprieties on the part of an officer or other member of the Department, even if the guidelines for filing such a complaint are not followed exactly by the reporting party.

It is the policy of the Department to ensure fair and effective discipline of all members, as well as progressive disciplinary procedures, while utilizing both positive and negative disciplinary measures.

The Office of Professional Standards (OPS) Captain and/or Lieutenant is responsible for

| 109 Discipline, Complaints, and Commendation | **Manassas Park Police General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Auth.. Ioh.. _. Evans, Ch. Police | By Authority of: Kimberly Alexander, City Manager | Page 2 of 24 |

monitoring all complaints coming to the attention of the Department, keeping the Chief of Police informed of all complaints made against Department members. It is the policy that General Order #109 will be reviewed annually to ensure quality control.

It is the policy of the Department to identify and publicly recognize all members of the Department who have rendered exemplary service above that which is required by duty. To this end, the Department maintains the Commendation Program, the Employee of the Quarter Program, and the Employee of the Year Program. The Commendation Program makes a written record of those acts of exemplary service that have been reported from within the Department, or from a citizen. The Employee of the Quarter Program recognizes the most outstanding member for each Quarter of the calendar year. The Employee of the Year Program recognizes the most outstanding member for each calendar year.

It is the policy of the Department to identify and publicly recognize all members of the Department who have rendered exemplary service above and beyond that which is required by duty and have saved the life of another person as a result of that service. To this end, the Department maintains the Honorable Service Medal Program.

It is the policy of the Department to identify and publicly recognize those members of the Department who have rendered service which demonstrates conspicuous gallantry, above and beyond that required by duty and have placed their lives in peril as a result of that service. To this end, the Department maintains the Medal of Valor Program.

**DISCUSSION:**
The Department is committed to the policy that discipline is a function of command, and a well-disciplined force is a force that voluntarily conforms to all laws, rules and orders. Law enforcement personnel, like all citizens, are protected by the guarantees of the United States Constitution, but as public employees they are in a peculiar and unusual position of public trust and responsibility. The public and the Department have a critical interest in expecting members to give frank and honest replies to questions which are directly related to the performance of their official duties and/or their fitness to hold public office.

It is recognized that members are often subject to intense pressures in the discharge of their duties. Members must remain neutral under circumstances that are likely to generate tension, excitement, and emotion. In such situations, words, actions, and events frequently result in misunderstanding and confusion. It is to the advantage of members to have a procedure for the investigation of allegations of misconduct and the underlying circumstances of an incident so that complaints can be resolved objectively. These procedures are designed to document and respond to all complaints. The amount of documentation and investigative resources is commensurate to the seriousness of the allegation(s).

The following definitions apply to this directive.
**DAYS:** Calendar days, provided however, that if the last day of any time period falls on a Saturday, Sunday, or City holiday, the time period is extended to the next business day.
**RELIEF FROM DUTY:** An administrative action taken by a supervisor where a subordinate member is temporarily relieved from performing the duties of his position.
**MEMBER:** Any individual whose duty assignment with the Department consists of sworn, non-sworn, permanent, temporary, full-time, part-time, or volunteer duties.

| 109 Discipline, Complaints, and Commendation | **Manassas Park Police General Orders** | Version: 1 |
|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | Page 3 of 24 |
| | By Authority of: Kimberly Alexander, City Manager | |

**COMPLAINT:** Any allegation of misconduct made against a specific member of the Department or against specific operations or activities of the Department.

**COMPLAINANT:** Any individual making a complaint against conduct or services of the Department, or any of its members.

**DUTY SUPERVISOR:** Any sworn officer who holds the rank or acting rank of Sergeant or above, who is in charge of a duty shift.

**INTERNAL AFFAIRS:** A part of the Office of Professional Standards' duties; responsible for the investigation of complaints filed that involve the integrity of the Department, or make allegations of serious misconduct, and to review those complaints that are investigated by supervisory personnel.

**EXONERATED:** The incident complained of did occur, but the actions of the accused were lawful and proper.

**FORMAL COMPLAINT:** A signed, written complaint of any nature.

**INFORMAL COMPLAINT:** A verbal complaint, unsigned written complaint, or anonymous complaint.

**NONCRIMINAL COMPLAINT:** A complaint, by any manner or source, the substance of which is purely administrative in nature, and without reference to any type of criminal conduct.

**NOT SUSTAINED:** The investigation failed to discover sufficient evidence to clearly prove or disprove the allegation(s).

**POLICY FAILURE:** The investigation indicates that the acts complained of did occur and were primarily caused by a deficiency in General Order(s), written directive(s), or established procedure(s).

**SUSTAINED:** The investigation disclosed sufficient evidence to clearly prove the allegation(s) made in the complaint.

**UNFOUNDED:** The investigation indicates that the acts complained of did not occur.

**COMMENDATION:** A written record of exemplary service rendered by a member of the Department above that which is required by duty.

**PROCEDURE.**

I. **The Internal Affairs Function**

    A.    The Chief of Police has the authority to initiate an Internal Affairs investigation. The Chief of Police may initiate an Internal Affairs investigation in response to any complaint affecting the integrity of the Department and shall initiate an internal Affairs investigation, regardless of the method of complaint, upon receipt of the following allegation(s) or information:

        1.    Corruption.

        2.    Brutality.

        3.    Use of Excessive Force.3

        4.    Violation of Civil Rights.

        5.    Criminal Misconduct.

        6.    In Anticipation of Possible Litigation.

    B.    Any member may request that the Chief of Police initiate an Internal Affairs investigation of the member's conduct, whenever a perception of a false accusation or a contrived situation is felt to exist.

    C.    The OPS Captain is normally designated as the Internal Affairs Officer and reports directly to the Chief of Police for Internal Affairs matters. The Chief of Police or OPS Captain may also designate any investigating authority he deems appropriate.

    D.    Strict confidentiality is afforded to Internal Affairs matters.

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authc... Joh... Evans, Ch... ...olice | By Authority of: Kimberly Alexander, City Manager | Page 4 of 24 |

E.   When an Internal Affairs investigation is initiated from a citizen complaint, a signed formal complaint is not mandatory, but is desirable. An anonymous complaint of misconduct may be sufficient to initiate an Internal Affairs investigation, based on the totality of the circumstances.

F.   Responsibilities of Duty Supervisors:

   1.   For allegations, or onsite instances, of police misconduct coming to their attention during their normal course of duty and while under their immediate control.

      a.   Immediate notification of command officials and the preliminary investigation of facts.

      b.   The obtaining of relevant photographs and/or other evidence.

   2.   Duty Supervisors are responsible for ensuring that all injuries of prisoners receive complete investigation and are properly documented.

G.   The OPS Captain maintains a liaison with all supervisors, and advises them of statistical trends of complaints.

H.   As necessary, the OPS Captain (or designated Department official) maintains a liaison with the City Attorney for advice and guidance during an investigation of allegations, which may include civil liability.

I.   The Chief of Police and/ or designee (OPS Captain) maintains secure files for Internal Affairs records, and receives the following:

   1.   All original complaint documents.

   2.   The designated copies of incident report records.

   3.   Copies of use of force reports.

   4.   Copies of reports of prisoner injuries.

J.   The OPS Captain and/or Chief of Police provide annual statistical data for publication in the annual report and other media.

## II.   The Office of Professional Standards (OPS) Captain.

A.   The OPS Captain is normally designated as the Internal Affairs Officer, and reports directly to the Chief of Police. However, the Chief of Police may:

   1.   Assign the administrative portion of this function to any department supervisor.

   2.   Designate any investigating authority he deems appropriate.

B.   Other duties of the OPS Captain includes:

   1.   Maintains a liaison with the Chief of Police and all supervisors and advises them of statistical trends of complaints.

   2.   Maintains a liaison with the City Attorney for advice and guidance during the course of an investigation of allegations as necessary.

   3.   Maintains secure files for Internal Affairs records along with the Chief of Police, receives all original complaint documents, designated copies of incident reports, use of force reports and copies of reports of prisoner injuries.

   4.   Provides annual reports of statistical data for publication in the yearly report and other media.

## III.   Relief from Duty

A.   Any member whose continued presence on the job is deemed to be a substantial and immediate threat to the welfare of the Department or the public, or who refuses to obey a lawful direct order

| 109<br>Discipline,<br>Complaints, and<br>Commendation | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>12-9-2014 | By Authority of:<br>John E. Evans, Chief of Police | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 5 of 24 |

from a superior officer, shall be immediately relieved from duty by any superior officer, pending an investigation of his actions, as authorized by the Code of Virginia Section 9.1-500.

B.    A relief from duty is a temporary administrative action which does not in itself affect a member's permanent rank, rate of pay, or benefits, and does not constitute a disciplinary act.

C.    Instances where an immediate relief from duty may be implemented include, but are not limited to:

    1.    Reporting for duty in an unfit condition.
    2.    Unauthorized absence from assigned work location or refusal to work.
    3.    Insubordination.
    4.    Criminal offenses committed on and off duty.
    5.    Obvious or observed brutality or intentional use of excessive force.
    6.    Falsifying any statement or record.
    7.    Intentionally abusing, destroying, damaging, stealing or defacing property, tools or equipment publicly or privately owned.

D.    Upon an immediate relief from duty, it is the responsibility of the superior officer making personal notice to take the following steps:

    1.    Advise the officer, or other member, that he is relieved from duty immediately, with pay, and that his official duties and law enforcement powers are suspended until such time as they are restored by the Chief of Police.
    2.    Take immediate possession of the officer's badge(s) of authority, Department identification cards, duty weapon(s) and any other issued equipment deemed necessary.
    3.    Order the relieved officer to report to the Office of the Chief of Police on the morning of the next regular business day to await further instructions.
    4.    Cause an immediate notification of the Chief of Police and appropriate supervisors.
    5.    Submit a written report in memorandum form to the Chief of Police or ranking command officer, prior to the next day, detailing the facts leading to the superior officer's decision and the actions taken.

## IV.    Types of Complaints.

A.    All complaints, including those processed informally and on the spot, are documented by the appropriate supervisor. Complaints are brought to the attention of the Department by a variety of methods; in person, by telephone, by letter, or anonymously. Some complaints require little investigation and can be summarily resolved. Others require varying amounts of investigation depending on the nature and extent of the allegation(s) and whether a formal or informal reply is made. Complaints are categorized as:

    1.    Informal.
    2.    Formal.
    3.    Internal Affairs.
    4.    Internal Affairs in anticipation of possible litigation.

B.    Informal complaints are verbal, anonymous, or unsigned written complaints that are usually given a verbal response from the Department.

C.    Formal complaints differ from informal complaints in that they are signed, written complaints. Formal complaints receive a written response.

D.    Internal Affairs complaints are those complaints affecting the integrity of the Department or its

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 6 of 24 |

members and usually contain allegations of criminal or serious misconducts defined by the Chief of Police. The Chief of Police initiates Internal Affairs investigations.

E. Internal Affairs complaints in anticipation of possible litigation are those complaints initiated by the Chief of Police involving issues that may result in civil action against the Department.

F. The Chief of Police, or designee, routinely disseminates information to the public on procedures to follow in registering complaints against the Department or its members.

V. **The Screening of Complaints.**

A. Members receiving a complaint concerning the services of the Department, or the conduct of a member, refers the complaint to the appropriate duty supervisor. It is not necessary for the complainant to offer a detailed account of the allegation, or to identify any particular member involved, prior to being interviewed by the duty supervisor. Complainants or witnesses should be offered a private setting when being interviewed.

   1. The duty supervisor completes an incident report record in order to initiate the documentation process.

B. Complaints initially received in the Office of the Chief of Police are usually referred to the duty supervisor or the OPS Captain, depending on the nature of the allegation(s), or may be handled immediately by an on duty supervisor. In all cases, a memorandum is completed to document the complaint.

C. Duty Supervisors screen complaints and may investigate and take immediate corrective measures on those minor complaints of a non-criminal nature within their normal authority, and may issue disciplinary action up to a written reprimand in furtherance of those corrective measures.

D. When a complaint is not resolved by the screening duty supervisor during his shift, the complaint is then referred to the OPS Captain or Chief of Police in the following manner:

   1. A memorandum, which includes a written version or paraphrased statement of the complaint (when the complaint is initially received verbally).

   2. The memorandum is sealed in an envelope and forwarded to the OPS Captain.

   3. In the event that the OPS Captain is unable to resolve the complaint, he prepares a memorandum, attaches the complaint, and forwards the package to the Chief of Police.

E. Resolved citizen complaints are documented and forwarded through the appropriate chain of command to the Chief of Police. The Chief of Police then forwards the record of the resolved citizen complaint to the OPS Captain, where it is reviewed, used for monitoring, tracking, and statistical purposes. Citizen complaints are sealed during routing unless hand delivered.

VI. **Informal Complaint Procedure.**

A. Informal complaints may consist of, but are not limited to, allegations of:

   1. Rudeness.

     2. Unfair or improper application of law, policy or procedure.

     3. Ineffective, inadequate police action or other service, or failure to take action.

     4. Tardiness or minor violations of rules and regulations.

     5. Insubordination.

B. The Chief of Police reviews citizen complaints on a daily basis and refers unresolved informal complaints to the appropriate supervisor. The OPS Captain investigates the complaint or reassigns the complaint to a superior officer (Lieutenant or Sergeant), and note whether a written or a verbal

| 109<br>Discipline,<br>Complaints, and<br>Commendation | **Manassas Park Police<br>General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Auth... | | Page 7 of 24 |
| | Joh... _. Evans, Ch... ...olice | By Authority of:<br>Kimberly Alexander, City<br>Manager | |

        reply is required to either the Chief of Police or the complainant.

    1.    In all cases, the supervisor who receives the initial complaint completes an incident report record in order to initiate the documentation process.

C.    Complaints regarding policies and procedures, or complaints regarding enforcement action, are normally resolved orally, providing the information necessary to clarify the issue. When this is done, the supervisor notes such action in a memorandum and returns it through the chain of command to the OPS Captain.

D.    Supervisors are encouraged to make every reasonable effort to resolve informal complaints at the lowest possible level of authority. This may require cooperation with other City departments or outside law enforcement agencies. Caution is used to avoid the inappropriate placing of blame or responsibility upon other departments or agencies. Caution is used when screening complaints of incidents where a summons was issued or an arrest made, to ensure the supervisor does not place himself in the position of "trying the facts" on the charges prior to a pending court proceeding.

    1.    In the event that the complaint is resolved as noted above without the need of further written documentation, the incident report record (see attachment) may form the only written documentation of the complaint. In this form of resolution, memorandum documentation as noted elsewhere in this section may be unnecessary.

E.    Responses to informal complaints may remain verbal whenever received verbally or informally, and the duty supervisor or superior officer makes a successful resolution during his shift. A notation of the resolution is made on a memorandum or the incident report record (see attachment) and forwarded to the Office of Professional Standards through the appropriate chain of command.

F.    Superior officers investigate assigned informal complaints, collect reports and other documentation or evidence as necessary, and maintain contact with the complainant. A written or verbal reply is made to the complainant and to the Chief of Police as required.

G.    If it is determined, at any time during the investigation, that the complaint includes possible criminal conduct of any member, the investigation is terminated and the evidence giving such a determination is immediately forwarded to the Chief of Police, so that the investigation may be reassigned as an Internal Affairs case.

H.    The resolution of most informal complaints may be attained with little disruption to daily operations. A superior officer asks officers direct questions concerning the incident and the information is summarized on a memorandum or the incident report record as appropriate, which is then forwarded through the chain of command. Requests for written statements or memoranda from members are normally reserved for formal investigations as a supplement to direct questions.

I.    Superior officers report the status of the complaint every two weeks to the complainant until the complaint is resolved. Most informal complaints are resolved within one week and must be resolved within 30 days, unless the Chief of Police has authorized an extension.

J.    When completing the memorandum concerning a case of member conduct, the superior officer concludes the memorandum with a finding from the list of outcomes below:

    1.    Unfounded.
    2.    Not Sustained.
    3.    Sustained.
    4.    Policy Failure.
    5.    Exonerated.

K.    When completing the memorandum concerning a case involving a review of a situation other than an

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | | By Authority of: Kimberly Alexander, City Manager | Page 8 of 24 |

allegation of member misconduct, the superior officer concludes the memorandum with a resolution or recommended remedy. The superior officer's recommendation must contain the following information:

1. A statement of the allegation(s) made by the complainant.
2. A statement of the situation as described by the member.
3. A statement of evidence that supports each side of the issue.
4. A conclusion and statement of what transpired based on the superior officer's analysis of the supporting evidence.
5. The identification of any policy failure or void.

L. When an informal complaint investigation sustains an allegation, supervisors ensure that appropriate discipline is recommended, or has occurred.

M. Nothing in the informal complaint investigation process is intended to preclude, prohibit, or delay any superior officer from the issuing of discipline up to a written reprimand for known violations of rules and regulations. In this event, an incident report record is completed (see attachment).

N. In some instances, the Chief of Police may forward a letter to the complainant explaining the results of the investigation and action(s) taken; however, most informal complainants receive a verbal reply from the superior officer assigned to investigate the complaint, when the case is closed.

O. Completed memorandums and or incident report records are sealed and forwarded through the appropriate chain of command to the OPS Captain and/or Chief of Police.

VII. **Formal Complaint Procedure.**

A. Formal complaints are signed, written complaints. A signed letter of complaint is a formal complaint.

B. Response procedure.

1. In all cases, the supervisor who receives the initial complaint completes an Incident Report Record (see attachment) in order to initiate the documentation process.
2. A written acknowledgment is forwarded to the complainant within seven days of receipt.
3. A written reply is forwarded to the complainant within 30 days of receipt.
   a. The Chief of Police may grant an extension period on a case-by-case basis.

C. Formal complaints may consist of, but are not limited to, allegations of

1. Rudeness.
2. Unfair or improper application of law, policy or procedure.
3. Ineffective, inadequate police action, or failure to take action.
4. Tardiness or minor violations of rules and regulations.
5. Insubordination.

D. Formal complaints that contain allegation(s) of criminal misconduct are referred to the Chief of Police and become Internal Affairs complaints. Internal Affairs complaints are investigated according to the procedures set forth in Section VIII of this General Order. The Chief of Police may refer, or reassign, any complaint investigation as an Internal Affairs investigation at any point during the complaint investigation process.

E. Complainants are provided a photocopy of their own written complaint upon request. All other supporting documentation becomes part of the official complaint file and is not for release.

F. Formal complaints of a non-criminal nature are only accepted from parties having firsthand

knowledge of an allegation. Firsthand knowledge means that the person was either involved in the incident, or was an eyewitness to the incident. Third party, non-criminal complaints filed as formal complaints are treated and investigated as informal complaints and may receive an oral response and minimal investigation unless otherwise warranted (see Section VI).

G. Formal complaints are referred to the Chief of Police, who reviews them daily, assigning them to the appropriate supervisor or to the OPS Captain, according to the allegation(s) contained in the complaint. Prior to such assignment, the Chief of Police causes a preliminary processing of the complaint package, including the following:

    1. A memorandum from the Chief of Police serves as a cover sheet that references an attached formal complaint.

    2. The written, formal complaint received from the complainant.

    3. A letter of acknowledgment from the Chief of Police or his designee addressed to the complainant. The letter advises the complainant that:

        a. The complaint has been received and assigned to an investigating officer.

        b. The investigating officer will contact the complainant within approximately 7 days.

        c. A written reply to the complaint will follow within approximately 30 days.

    4. The complaint is forwarded to the investigating officer through the appropriate supervisor or OPS Captain.

H. Investigating officers investigate the formal complaint, collect reports and other documentation or evidence as necessary, and remain in contact with the complainant. A written report is sent to the Chief of Police as soon as possible, but must be submitted within 25 days, unless the Chief of Police has granted an extension. Extensions are communicated to complainants.

I. Members are asked direct questions concerning the incident or allegation(s) and information is summarized by the superior officer in his written report. Requests for a formal memorandum from members may be made to supplement direct questioning.

J. When completing the memorandum concerning a case of member misconduct, the superior officer concludes the memorandum with a finding from the list of outcomes below:

    1. Unfounded.

    2. Not Sustained.

    3. Sustained.

    4. Policy Failure.

    5. Exonerated.

K. When completing the memorandum concerning a review of a situation, rather than an allegation of member misconduct, the superior officer concludes the memorandum with a resolution or recommended remedy.

The superior officer's recommendation must contain the following information:

    1. A statement of the allegation(s) made by the complainant.

    2. A statement of the situation as described by the member.

    3. A statement of evidence, which supports each side of the issue.

    4. A conclusion and statement of what transpired based on the superior officers analysis of the supporting evidence.

    5. The identification of any policy failure or void.

L. When a formal complaint investigation sustains an allegation, the supervisor and/or the OPS

| 109 Discipline, Complaints, and Commendation. | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Auth... John ... Evans, Ch... Police | By Authority of: Kimberly Alexander, City Manager | Page 10 of 24 |

Captain note their recommendation for discipline on the memorandum, or note the reason for non-concurrence with the report.

M.   Nothing in the formal complaint investigation process is intended to preclude, prohibit, or delay any superior officer from the issuing of discipline up to a written reprimand for known violations of rules and regulations.

## VIII.   Internal Affairs Investigation Procedure.

A.   The decision to initiate an Internal Affairs investigation rests solely within the authority of the Chief of Police.

B.   When circumstances allow, and the investigation would not be hindered, the accused member is immediately notified in writing that an Internal Affairs investigation is about to be conducted. The notice includes, at a minimum:

1.   The name of the investigating officer.
2.   The general nature of the allegation(s).
3.   The member's rights and responsibilities.
4.   The range of possible disciplinary action.

C.   When the investigation requires that a member be formally questioned, the following procedures apply:

1.   Questioning of the member is conducted at a reasonable hour of day, preferably when the member is on duty, unless exigencies of the investigation dictate otherwise. The member does not suffer a loss of pay and is paid for any interview conducted while the member is off duty.

2.   Questioning normally takes place at the Manassas Park Public Safety Building or in a supervisor's office, but may occur in other locations as deemed appropriate by the investigating authority. The member is provided with an Administrative Proceedings Admonishment Form (see attachment). The Administrative Proceedings Admonishment Form is an instrument that will be used to compel a member to speak on the matter being investigated if they should refuse, at any time, to cooperate with the investigating officer in providing information that will further include/exclude member(s) who are the focus of the internal investigation(s).

3.   The member is informed of the rank and name of the investigating officer, as well as the rank and name of the questioning person (if other than the investigating officer) and all persons present during questioning. The member is also apprised, in writing, of the allegation(s).

4.   The member is informed of the nature of the investigation before any questioning commences, including the name of the complainant. The address of the complainants and or witnesses need not be disclosed. Sufficient information to reasonably apprise the member of the allegations is provided. If the complaint is filed in writing, a copy is furnished to the member.

5.   If the member being questioned is a witness only, he is so informed at the onset of the interview. No admonition is required for witnesses.

6.   Questioning shall not be excessive. Reasonable breaks during the interview are allowed. Time is provided for personal necessities, meals, telephone calls, and rest periods as reasonably necessary.

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 11 of 24 |

7. Members are not to be subjected to any offensive language, nor threatened with transfer, dismissal or other disciplinary punishment. The member may, however, be informed that failure to cooperate fully with the investigation and to answer truthfully may result in disciplinary action. No promises of reward are made as an inducement to answering questions. Members, however, are informed of the range of disciplinary action if found guilty of the allegations.

8. The complete interview of the member should be recorded if possible. There is no "off-the-record" questions, all recesses called during the questioning is noted for the record.

9. A member does not have the right to refuse to answer any question concerning their performance of duty, or their adherence to rules, regulations, policies and procedures. Any admissions made during such questioning however, cannot be used against such member in a subsequent criminal prosecution.

10. The refusal by a member to answer questions, or to submit a report, may result in disciplinary action.

11. Members do not have the right to have counsel present during administrative interviews,

D. A member may be required to submit to the following examinations or tests, at the Department's expense, in the event that particulars of such examinations or tests are related to the member's fitness for duty, and no criminal evidence is the intended result:

1. Medical.
2. Psychological/psychiatric.
3. Laboratory.

E. Prior to taking a medical, psychological, psychiatric, or laboratory examination or test, the member is given a description of the methodology or test to be used, the name of the laboratory, psychologist, psychiatrist or medical doctor, likely conclusions to be drawn from the examination or test, and possible disciplinary action(s) that may stem from the conclusion.

F. A member may be required to be photographed or to participate in a live line-up.

G. A member may be requested to submit a financial disclosure statement when the disclosure is material to a particular and specific allegation and in conformity to Code of Virginia.

H. Polygraph examinations are only conducted on a member if authorized by the Chief of Police. Polygraph examinations may be utilized in the event that:

1. The member under review requests the polygraph examination.
2. Information is developed to indicate the member has not been truthful or may not be forthcoming, during the investigative process.

I. If, during the course of the Internal Affairs investigation, it is determined that criminal misconduct may have occurred, the investigating officer notifies the Chief of Police immediately. The Chief of Police then determines whether a bifurcation of the investigation is necessary. In the event that bifurcation is necessary, a criminal investigation is to be initiated.

1. No portion of a members compelled statement or information gained as a result thereof may be used in the conduct of such a criminal investigation.

J. The Internal Affairs investigator makes weekly progress reports on pending investigations to the Chief of Police. Contact is made at least every two weeks with the complainant. Written findings are normally provided within 30 days, unless an extension is requested in writing, and granted by the Chief of Police. Such extensions are communicated in writing to the complainant.

K. Upon completion of the investigation, the Internal Affair Investigator prepares an Internal Affairs

| 109 Discipline, Complaints, and Commendation. | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Auth... Joh... Evans, Ch... Police | | Page 12 of 24 |
| | | By Authority of: Kimberly Alexander, City Manager | |

case file. The Internal Affairs case file contains, at a minimum.

    1.    An investigative summary, including a determination of what occurred, based upon analysis of the supporting evidence and a finding.

    2.    Copies of all notifications, correspondence, and related official documents.

    3.    A statement of the allegation(s) made by the complainant.

    4.    A written statement by the accused member(s).

    5.    A written statement(s) made by any witnesses if possible.

    6.    Any other documentary or physical evidence (radio logs, photographs, etc.).

    7.    The identification of any policy failure or void.

L.    The Internal Affairs case file always contains a statement of the Internal Affairs Investigator's findings in the case, from the following:

    1.    Unfounded.

    2.    Not Sustained.

    3.    Sustained.

    4.    Policy Failure.

    5.    Exonerated.

M.    Internal Affairs case files having any finding, as noted in Section "L," above, are forwarded to the OPS Captain. Upon his review, he summarizes the findings, notes his concurrence or non-concurrence to the findings and disciplinary recommendation, or makes an alternate recommendation in memorandum form. The Internal Affairs case file is always submitted to the Chief of Police.

N.    The Chief of Police reviews the Internal Affairs case file. Reports containing findings of sustained allegations may be forwarded to the City Manager and/or Mayor for his review and recommendation of disciplinary action if requested by the Chief of Police.

O.    Where the Internal Affairs case file contains findings indicating a policy failure, the Chief of Police causes the OPS Captain and supervisors to initiate an immediate review of the affected policy.

P.    The member under investigation may ascertain the status of his pending investigation upon request to the OPS Captain or the Chief of Police.

Q.    Members are notified in writing of the findings of the Internal Affairs investigation.

IX.    **Implementation of Disciplinary Measures, Generally**

A.    Notice of charges.

    1.    No written notice is required prior to affecting an oral reprimand, an employee counseling discipline record, or a written reprimand.

    2.    Disciplinary action greater than a written reprimand for unsatisfactory behavior may be affected immediately, upon giving written notice to the member. Procedural guarantees normally precede the imposition of disciplinary action, but may follow the affected action, such as a suspension from duty.

    3.    Disciplinary action greater than a written reprimand and for unsatisfactory work performance, may not be effected until a second written notice of intent of such action is given to the member.

    4.    A memorandum containing a "notice of charges" is issued by the Chief of Police upon receipt of an Internal Affairs case file with a finding of sustained allegations from

Internal Affairs, a superior officer's investigation of a sustained complaint, or other recommendation from competent authority. The notice of charges memorandum contains the following information:

    a.      The specific charge(s), the basis thereof, the recommended disciplinary action, and the Chief of Police's intention to affect the discipline unless evidence to the contrary or mitigation of penalty is presented within five (5) calendar days.

    b.      The member has the opportunity to respond orally and in writing to the charges within five (5) calendar days.

    c.      The member may be assisted by legal counsel at his own expense.

5. Any agreements reached between the Chief of Police and the member during this five (5) day period is reduced to writing.

6. If the penalty is reduced to an oral or written reprimand, further procedural guarantees are not afforded and the matter is closed.

7. Within five (5) calendar days after making a written or oral response to the charges, or ten (10) days from the notification of charges, the member is provided written notification from the Chief of Police of the intention to take further action on the charges or to discontinue action thereof.

8. With the exception of oral or written reprimands, members may then proceed with procedural guarantees as provided in the City of Manassas Park personnel policy within ten (10) days of receipt of charges, or accept the penalty as specified by the Chief of Police.

9. Sustained charges are documented and maintained on file by the Chief of Police and the Administrative Division Chief.

B. Upon an Internal Affairs finding of "sustained," and following the recommendation of the appropriate supervisor, the Chief of Police administers disciplinary action in accordance with the Department's General Orders and the City of Manassas Park Employee Personnel Policy.

C. Members are notified in writing of findings and disciplinary actions taken.

D. Oral admonishments and written reprimands are executed as soon as possible or after a finding of "sustained" without further relief from any appeals process. Oral and Written reprimands are not able to be appealed to the City Manager and/or Mayor. Progressive Disciplinary actions greater than a written reprimand are recommended by the Chief of Police and implemented by the City Manager and/or Mayor, as specified in section X, below.

E. The member has the right to initiate a grievance under the grievance procedures as outlined in the City of Manassas Park Employee Personnel Policy or Department General orders.

X.       Negative Discipline and Progressive Disciplinary Measures.

    A.      The Verbal/Oral Reprimand Counseling verbally notifies the member that performance or behavior must be improved. The Supervisors are responsible for the proper documentation of the Verbal /Oral Reprimand.

| 109<br>Discipline,<br>Complaints, an<br>Commendatior | Manassas Park Police<br>General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Auth<br>Joh ... Evans, Ch., Police | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 14 of<br>24 |

1. Supervisors are responsible for making verbal reprimands when counseling has failed to produce the desired changes.
2. The verbal reprimand defines the areas in which improvement is required, sets up goals leading to improvement and informs the employee that failure to improve will result in more serious action.
3. The content of the Verbal/Oral Counseling Reprimand Record should contain the following:
   a. A synopsis of what occurred.
   b. The date and time of the event that is the cause of the reprimand.
   c. The specific rule, regulation, policy, procedure or directive that was violated.
   d. Specific directions concerning what actions must be taken to correct the situation.
4. The supervisor signs and dates the record documenting that Verbal/Oral Counseling had occurred.
   a. The member is not required to sign the document.
   b. The member may note his comments on the record.
   c. The member is provided with a copy of the completed record if requested.
5. The supervisor documents the date, time and content of the verbal reprimand in the members' Critical Incident File. The issuing Supervisor and the Administration Chief maintains a copy of the verbal reprimand in an Administrative Critical Incident File. No record is placed in the reprimanded members official personnel file unless subsequent action is necessary.
6. The verbal reprimand is not subject to the members procedural guarantees.

B. The Written Reprimand is a written notification in memorandum form to the member that further disciplinary action will be taken unless performance improves.
   1. Supervisors are responsible for the issuance of written reprimands when other disciplinary measures have failed to produce the desired changes, or when the gravity of the offense indicates that a higher degree of discipline as required.
   2. When a written reprimand is issued by the Chief of Police, a transfer of duty assignment for disciplinary reasons may be a part of the written reprimand.
      a. The normal rotation of a specialized assignment is not a transfer for disciplinary reasons.
      b. A transfer for disciplinary reasons is specified in written charges.
      c. A transfer for disciplinary reasons does not involve a reduction in pay, and therefore, is not a demotion.
   3. The content of the written reprimand may be essentially the same as the Employee Counseling/Discipline Record.
   4. The supervisor and member sign and date the written reprimand.
      a. A member's refusal to sign the written reprimand constitutes insubordination and may result in further disciplinary action.
      b. The member is provided with a copy of the completed written reprimand.
   5. The supervisor forwards the written reprimand through his chain of command to the Chief of Police.
   6. The Chief of Police forwards the written reprimand to the Administrative Division Chief

| 109<br>Discipline,<br>Complaints, and<br>Commendation | **Manassas Park Police<br>General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Auth..<br>Joh.. .. Evans, Ch.. ..olice | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 15 of<br>24 |

and the written reprimand is added to the members official personnel file.

    7. Issuance of the written reprimand is not subject to the member's procedural guarantees.

C. The Suspension from Duty consists of a separation from the Department for a specified period of time, with a loss of pay, duties and official status for the duration of the suspension. The City Manager and/or Mayor is responsible for determining the duration of the suspension from duty.

    1. The Chief of Police is responsible for affecting a suspension from duty on the authority of the City Manager and/or Mayor.

    2. When an investigation of a member's misconduct, results in a suspension from duty, the Chief of Police provides a notice of suspension to the member in writing, which includes:

    a. A statement citing the reason for the suspension.

    b. The effective date and duration of the suspension.

    c. A statement of the members' status and the conditions of the suspension.

    d. A statement that the officer's police powers are suspended until further notice.

    e. A warning of the range of further disciplinary action that may result if the situation that caused the suspension is not corrected.

    f. A statement advising the member that a suspension from duty is subject to the member's procedural guarantees or the member's right to file a grievance, but not both.

    3. When an officer is suspended from duty, the Chief of Police causes the following:

    a. The surrender of the officer's badge(s) of authority, Department identification cards and duty weapon(s) and any other issued equipment as specified by the Chief of Police.

    b. The surrendered equipment is stored in a location determined by the Chief of Police.

    c. The return of surrendered equipment to the officer following a suspension from duty is determined by the Chief of Police.

    4. A copy of the notice of suspension is forwarded to the Administrative Division Chief and added to the member's official personnel file.

D. The Withholding of a Merit Increase consists of a temporary or permanent loss of a merit increase, which the member would otherwise receive. The withholding of a merit increase is recommended by the Chief of Police, and implemented by the City Manager and/or Mayor.

    1. The Chief of Police may recommend the withholding of a member's merit increase to the City Manager and/or Mayor when other disciplinary measures have failed to produce the desired changes, or when the gravity of the offense indicates that a higher degree of discipline is required.

    2. When an investigation of a member results in the withholding of a merit increase, the City Manager/Mayor and/or Chief of Police provides a notice of the action to the member in writing, including:

    a. A statement citing the reasons for the withholding of a merit increase.

    b. The duration of time in which the merit increase will be withheld or reevaluated.

    c. A warning of the range of further disciplinary action that may result if the situation that caused the withholding of a merit increase is not corrected.

    d. A statement advising the member that the withholding of a merit increase is subject to the members procedural guarantees, or the members right to file a

| 109<br>Discipline,<br>Complaints, and<br>Commendation | Manassas Park Police<br>General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Auth...<br>Joh... Evans, Ch... Police | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 16 of<br>24 |

grievance, but not both.

3.     A copy of the notice of the withholding of a merit increase is forwarded to the Department of Human Resources, or designee, and added to the members official personnel file.

E.     The Administrative Decrease consists of a decrease in the member's base rate of pay of at least ten percent. The administrative decrease is recommended by the Chief of Police and implemented by the City Manager and/or Mayor.

1.     The Chief of Police may recommend an administrative decrease to the City Manager and/or Mayor when other disciplinary measures have failed to produce the desired changes, or when the gravity of the offense indicates that a higher degree of discipline is required.

2.     When an investigation of a member results in an administrative decrease, the City Manager and/or Mayor provides a notice of the action to the member in writing, including:

    a.     A statement citing the reasons for the administrative decrease.

    b.     A warning of the range of further disciplinary action that may result if the situation that caused the administrative decrease is not corrected.

    c.     A statement advising the member that the administrative decrease is subject to the member's procedural guarantees (see attachment), or the member's right to file a grievance, but not both.

3.     A copy of the notice of administrative decrease is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the members official personnel file.

F.     The Demotion consists of a lowering of the member's position classification status. The demotion is recommended by the Chief of Police and implemented by the City Manager and/or Mayor.

1.     The Chief of Police may recommend a member's demotion to the City Manager and/or Mayor when other disciplinary measures have failed to produce the desired changes, or when the gravity of the offense indicates that a higher degree of discipline is required.

2.     When an investigation of a member results in a demotion, the City Manager and/or Mayor provides a notice of the action to the member in writing, including:

    a.     A statement citing the reasons for the demotion.

    b.     In cases where a demotion is involuntary, a warning of the range of further disciplinary action that may result if the situation that caused the demotion is not corrected.

    c.     A statement advising the member that a demotion is subject to the member's procedural guarantees (see attachment) or the member's right to file a grievance, but not both.

3.     A demotion is not used as a disciplinary action if the member cannot qualify for the lower ranked position or if the demotion would require the displacement of another member.

4.     A copy of the notice of demotion is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

G.     Termination consists of a permanent separation from the Department and the City workforce. Dismissal is recommended by the Chief of Police and implemented by the City Manager and/or Mayor.

1.     The Chief of Police may recommend a member's termination to the City Manager and/or

| 109<br>Discipline,<br>Complaints, and<br>Commendation | | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Authe...<br>Ioh ... Evans, Chi... Police | By Authority of:<br>Kimberly Alexander, City<br>Manager | Page 17 of<br>24 |

Mayor when other disciplinary measures have failed to produce the desired changes, or when the gravity of the offense indicates that a higher degree of discipline is required.

2. When an investigation of a member results in a recommended termination, the City Manager and/or Mayor provides a pre-termination due process hearing notice to the member in writing, including:

    a. A statement citing the reasons for the proposed termination.

    b. The date and location of a pre-termination due process hearing.

    c. A statement of the member's right to all facts regarding the recommendation for termination, right of legal representative of his choosing, and the right to examine, cross examine, question and present evidence on behalf of the member at the pre-termination due process hearing.

3. A copy of the notice of pre-termination due process hearing is forwarded to the Department of Human Resources and Administrative Division Chief and added to the members official personnel file.

4. The City Manager and/or Mayor presides over the pre-termination due process hearing. The City Manager and/or Mayor notifies the member in writing of his findings in the pre-termination due process hearing. A copy of such notification is forwarded to the Department of Human Resources, and Administrative Division Chief and added to the member's official personnel file.

5. In the event that the pre-termination due process hearing determines that the member is to be terminated, the City Manager and/ or Mayor provides a termination notice to the member in writing, including:

    a. A statement citing the reasons for the termination.

    b. The effective date of termination.

    c. A statement of the status of any fringe benefits and retirement benefits after termination.

    d. A statement advising the member that termination is subject to the member's procedural guarantees (see attachment) or the member's right to file a grievance, but not both.

    e. A copy of the notice of termination is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

    f. Members dismissed from the Department shall not be re-employed or reinstated by the Department or the City.

**XI. Investigations in Anticipation of Litigation.**

    A. It is not always possible to know in advance what circumstances may give rise to litigation. However, the Department is very sensitive to those circumstances in which there is some possibility, even if remote, that the City, Department, or the member may be the subject of civil litigation.

    B. When a risk of litigation is identified, the Department acts to protect its interests by immediately initiating an investigation, on authority of the City Attorney, to document all facts, identify witnesses, and obtain statements from all parties involved in the case.

    C. The OPS Captain, or other investigating officer designated by the Chief of Police, maintains the

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of John E. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 18 of 24 |

confidentiality of all investigations prepared in anticipation of litigation for the purposes of legal defense.

D. Investigation procedure.

    1. In any circumstance in which the Department has reason to believe that a member, the Department itself, or the City may be subject to litigation as a consequence of any event, the Department, by memorandum from the Chief of Police or his designee, formally notifies the City Manager, who forwards the information to the City Attorney in writing of that possibility.

        a. The Department is to liberally construe this requirement in favor of reporting where any doubt exists.

    2. Once such notice is provided, the City Attorney shall be the direct addressee, with a copy forwarded to the Chief of Police, of all investigative reports conducted by any officer or agent of the Department with respect to the incident-giving rise to the report, including interviews with witnesses and the personnel involved.

    3. The original investigative case file, once completed, shall be sealed and maintained by the OPS Captain, unless directed otherwise by the Chief of Police. All such investigative case files involving the civil aspects of any case shall be prepared at the express direction of the City Attorney to assist in the defense of any possible civil litigation.

        a. This shall not include those reports prepared as part of a criminal investigation

    4. The City Attorney may occasionally request that the Chief of Police provide direct investigative assistance in anticipation of, or preparation for, litigation. The Chief of Police may provide such assistance, as he deems necessary for that purpose.

    5. The Chief of Police is responsible for notifying the City Manager and/or Mayor of potential claims or suits at the earliest possible time, in order to ensure early notice to the Governing Body, City Attorney and the City's insurance carriers (if any).

E. The Department's actions provide a framework for the orderly investigation into incidents giving rise to civil litigation, and to ensure, to the greatest extent authorized by law, the confidentiality of investigative reports necessary to the defense of the City, Department, and its members.

F. Attorney/client considerations.

    1. All information developed during the course of such investigations shall be considered to be "memoranda, correspondence, evidence, and complaints," and prepared for use by the City Attorney for purposes associated with actual or probable litigation, or other specific legal matters requiring the provision of legal advice by the City Attorney.

    2. Any reports related to an investigation in anticipation of litigation, shall be considered "attorney work product," and are not subject to discovery or release pursuant to the Virginia Freedom of Information Act.

## XII. Positive Discipline.

A. Inspections are a form of positive discipline.

    1. Line and staff inspections are used to generate findings, conclusions, and recommendations that affect Department planning efforts, training programs, and environmental or safety concerns.

    2. When discovered, acts and conditions contrary to rules, regulations, policy, practice, or the good interest of the Department are corrected in a positive and constructive manner.

| 109<br>Discipline,<br>Complaints, and<br>Commendation | Manassas Park Police<br>General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date:<br>12-9-2014 | By Authority of:<br>John E. Evans, Chief of Police | By Authority of:<br>Kimberly Alexander, City Manager | Page 19 of 24 |

       3.    The increased efficiency of daily operations and uniformity of application that is derived from a well-run inspections program, has a profound effect on discipline as a whole.

B.    Training is a form of positive discipline.

    1.    The Department supports active participation in contemporary training programs, and recognizes the need to use training to encourage the behavior and performance standards it expects. Supervisors are accountable for ongoing training of members under their command.

    2.    Supervisors are encouraged to emphasize training in their approach to discipline. Roll call training is provided routinely to provide members with blocks of instruction concerning new laws or ordinances, procedures or techniques. Roll call topics generally take very little time to instruct.

    3.    Supervisors are in the best position to make an early detection of a demonstrable need for additional training for groups or individuals under their command.

    4.    Recommendations for advanced or remedial training are made by supervisors to the Captain and/or Lieutenant whenever:

        a.    Advanced training would benefit individuals or groups by bringing about state-of-the-art procedures.

        b.    Remedial training is demonstrably needed by a member based on known performance when compared to the existing training record.

        c.    Outside training compliments the goals and objectives of the Department.

    5.    The Captain, Lieutenant, or designee is responsible for the establishment and overall continuity of training programs.

C.    Counseling is an extension of the training process as it applies to a supervisor's daily responsibilities, and is a form of positive discipline. Counseling may be in the verbal or written form.

    1.    Verbal counseling is an ongoing process. The supervisor, including an admonishment that if the behavior or performance is not corrected within a reasonable time frame, negative discipline may result, makes a record of the verbal counseling in memorandum form.

    2.    Written counseling in memorandum form is used to document written instances of counseling for minor transgressions. Upon completion the supervisor maintains the memorandum in his files.

D.    The Commendation Program (see Section XIV) is a form of positive discipline.

E.    The Officer of the Quarter Program (see Section XIII) is a form of positive discipline.

F.    The Officer of the Year Program (see Section XV) is a form of positive discipline.

G.    The Honorable Service Medal Program (see Section XVI) is a form of positive discipline.

H.    The Medal of Valor Program (see Section XVII) is a form of positive discipline.

**XIII.   Commendation Program.**

A.    The Commendation Program provides a system for recognizing members of the Department for exemplary service rendered above that required by duty. While an individual member is normally recognized, multiple members or groups may be recognized. All members of the Department are eligible for commendations.

B.    The commendation consists of written recognition of the member's actions.

C.    The Chief of Police is responsible for the awarding of the commendation.

| 109 Discipline, Complaints, and Commendation | **Manassas Park Police General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John _. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 20 of 24 |

    D.    Nomination procedure:

        1.    A commendation is awarded based on nominations received from Department members or citizens.

            a.    All nominations from members are reduced to writing in a memorandum and forwarded through the member's chain of command to the Chief of Police.

            b.    Verbal or written nominations from citizens may be received by any member of the Department. The member then writes a memorandum documenting the nominee's actions, attaches any available written documentation from the citizen, and forwards the package through the chain of command to the Chief of Police.

            c.    The Chief of Police determines whether the nomination meets the criteria noted in Section A, above. The Chief of Police normally acknowledges a citizen's nomination with a letter of receipt.

    E.    The Chief of Police delivers the Commendation in memorandum form to the member.

        1.    A copy of the Commendation is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

        2.    The Commendation recipient is eligible to be recognized in the Employee of the Quarter and Employee of the Year Programs.

    F.    The commendation is included in the member's yearly performance review.

**XIV.    Employee of the Quarter Program.**

    A.    The Employee of the Quarter Program provides a system for recognizing the most outstanding member(s) of the Department for each quarter of the calendar year. While an individual member is normally recognized, multiple members or groups may be recognized. All members of the Department are eligible for the Employee of the Quarter Program.

    B.    The Employee of the Quarter is determined at quarterly Department Staff Meetings.

        1.    The log of all Medal of Valor awards, Honorable Service Medal recipients, and Commendations awarded during the previous quarter is disseminated to all members present at the Department Staff Meeting. The Employee of the Quarter for a given three-month period, is determined during the succeeding quarter Department Staff Meeting.

        2.    The Chief of Police (or his designee) calls for nominations for Employee of the Quarter. Any member in attendance at the Department Staff Meeting is eligible to make nominations. As nominations are made, the member(s) actions are discussed and the nomination is then seconded. There is no limit on the number of nominations made.

        3.    At the close of nominations, the Chief of Police announces the nominees individually and calls for a vote in favor of each nominee. A majority vote determines the Employee of the Quarter.

    C.    The Employee of the Quarter is notified by a memorandum from the Chief of Police.

        1.    A copy of the memorandum is forwarded to the Department of Human Resources and Administrative Division Chief and added to the members official personnel file.

        2.    A copy of the memorandum is disseminated to all personnel within the Department.

    D.    The Employee of the Quarter is publicly recognized.

        1.    A photograph of the member and a synopsis of the commendation are posted on the wall located in the Public Safety Building, for one calendar year.

        2.    The Chief of Police designates an evening shift roll call for public recognition of the

| 109 Discipline, Complaints, an Commendation | **Manassas Park Police General Orders** | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Auth Ioh _. Evans, Ch, Police | By Authority of: Kimberly Alexander, City Manager | Page 21 of 24 |

Employee of the Quarter and issues a memorandum inviting all members to attend. The Chief of Police personally recognizes the member as noted above and presents him with an Employee of the Quarter Plaque.

3. The Employee of the Quarter is recognized in the City's newsletter.

4. Employee of the Quarter recipients are eligible to be recognized in the Employee of the Year Program.

E. Employee of the Quarter awards are included in the member's yearly performance review.

XV. **Employee of the Year Program.**

A. The Employee of the Year Program provides a system for recognizing the most outstanding member(s) of the Department for each calendar year. While an individual member is normally recognized, multiple members or groups may be recognized. All members of the Department are eligible for the Employee of the Year Program.

B. The Employee of the Year is determined during the succeeding calendar year's January Department Staff Meeting. While the Employee of the Year is normally determined from the Employee of the Quarter list, any member of the Department is eligible.

1. The log of all Medal of Valor recipients, Honorable Service Medal recipients, and Employees of the Quarter during the previous year, is disseminated to all members present at the Department Staff Meeting.

2. The Chief of Police (or his designee) calls for nominations for Employee of the Year. Any member in attendance at the Department Staff Meeting is eligible to make nominations. As nominations are made, the member(s) actions are discussed, and the nomination is then seconded. There is no limit on the number of nominations made.

3. At the close of nominations, the Chief of Police announces the nominees individually and calls for a vote in favor of each nominee. A majority vote determines the Employee of the Year.

C. The Employee of the Year is notified by a memorandum from the Chief of Police.

1. A copy of the memorandum is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

2. A copy of the memorandum is disseminated to all personnel within the Department and posted on the Patrol roll call board in the squad room.

D. The Employee of the Year is publicly recognized.

1. A photograph of the member and a synopsis of the members' actions are posted on the Department Awards Wall located in the Public Safety Building, for one calendar year.

2. The Chief of Police designates an evening shift roll call for public recognition of the Employee of the Year and issues a memorandum inviting all members to attend. The Chief of Police personally recognizes the member as noted above and presents him with an Employee of the Year Plaque.

3. The Employee of the Year is recognized in the City's newsletter.

E. Employee of the Year awards are included in the member's yearly performance review.

XVI. **Honorable Service Medal Program.**

A. The Honorable Service Medal Program provides a system for recognizing those members of the Department who have rendered exemplary service above and beyond that required by duty and have saved the life of another person as a result of that service. The Honorable Service Medal is

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 22 of 24 |

normally awarded to an individual member, although multiple members or groups may be recognized. All members of the Department are eligible for the Honorable Service Medal Program.

B.    The Honorable Service Medal consists of written and public recognition and the awarding of the Honorable Service Medal itself. See attachment for the configuration of the Honorable Service Medal.

C.    The Chief of Police is responsible for awarding the Honorable Service Medal.

D.    Nomination procedure:

     1.    Honorable Service Medals are awarded based on nominations received from Department members or citizens.

         a.    All nominations from members are reduced to writing in a memorandum and forwarded through the member's chain of command to the Chief of Police.

         b.    Verbal or written nominations from citizens may be received by any member of the Department. The member then writes a memorandum documenting the nominee's actions, attaches any available written documentation from the citizen, and forwards the package through the chain of command to the Chief of Police.

         c.    The Chief of Police determines whether the nomination meets the criteria noted in Section A, above. The Chief of Police normally acknowledges a citizen nomination with a letter of receipt.

E.    The Honorable Service Medal recipient is notified by a memorandum from the Chief of Police.

     1.    A copy of the memorandum is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

     2.    A copy of the memorandum is disseminated to all personnel within the Department, and posted on the Patrol roll call bulletin board.

F.    The Honorable Service Medal recipient is publicly recognized.

     1.    The Chief of Police personally awards the Honorable Service Medal to the recipient, at a time and location determined by the Chief of Police on a case-by-case basis, and issues a memorandum inviting all members to attend. The Chief of Police personally recognizes the member as noted above and presents him with the Honorable Service Medal.

     2.    A photograph of the member and a synopsis of the member's actions are posted on the Department Awards Wall located in the Public Safety Building, for one calendar year.

     3.    The Chief of Police designates an evening shift roll call for public recognition of the Honorable Service Medal recipient and issues a memorandum inviting all members to attend. The Chief of Police personally recognizes the member as noted above.

     4.    The Honorable Service Medal recipient is recognized in the City's newsletter.

     5.    The Honorable Service Medal recipient is eligible to be recognized in the Employee of the Quarter and Employee of the Year Programs.

     6.    The Honorable Service Medal award is included in the member's yearly performance review.

XVII.    **Medal of Valor Program.**

A.    The Medal of Valor Program provides a system for recognizing those members of the Department who have rendered service which demonstrates conspicuous gallantry, above and beyond that

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John C. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 23 of 24 |

required by duty and have placed their lives in peril as a result of that service. The Medal of Valor is normally awarded to an individual member, although multiple members or groups may be recognized. All members of the Department are eligible for the Medal of Valor Program.

B. The Medal of Valor consists of written and public recognition and the awarding of the Medal of Valor itself. See attachment for the configuration of the Medal of Valor.

C. The Chief of Police is responsible for awarding the Medal of Valor.

D. Nomination procedure:

    1. The Medal of Valor is awarded based on nominations received from Department members or citizens.

        a. All nominations from members are reduced to writing in a memorandum, and forwarded through the member's chain of command to the Chief of Police.

        b. Verbal or written nominations from citizens may be received by any member of the Department. The member then writes a memorandum documenting the nominee's actions, attaches any available written documentation from the citizen, and forwards the package through the chain of command to the Chief of Police.

        c. The Chief of Police determines whether the nomination meets the criteria noted in Section A, above. The Chief of Police normally acknowledges a citizen's nomination with a letter of receipt.

E. Medal of Valor recipients are notified by a memorandum from the Chief of Police.

    1. A copy of the memorandum is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

    2. A copy of the memorandum is disseminated to all personnel within the Department and posted on the Patrol roll call bulletin board.

F. The Medal of Valor recipient is publicly recognized.

    1. The Chief of Police personally awards the Medal of Valor to the recipient at a time and location determined by the Chief of Police on a case-by-case basis, and issues a memorandum inviting all members to attend. The Chief of Police personally recognizes the member as noted above and presents him with the Medal of Valor.

    2. A photograph of the member and a synopsis of the members actions are posted on the Department Awards Wall located in the public lobby of Department Headquarters, for one calendar year.

    3. The Medal of Valor recipient is recognized in the City's newsletter.

    4. Medal of Valor recipients are eligible to be recognized in the Employee of the Quarter and Employee of the Year Programs.

G. The Medal of Valor award is included in the member's yearly performance review.

H. In the event that the Medal of Valor is awarded posthumously, the member's next-of-kin receive the award in honor of the member.

    1. When possible, the Chief of Police presents the Medal of Valor and written notification to the member's next-of-kin prior to the member's funeral.

    2. Any subsequent use of the Medal of Valor during the funeral proceedings is determined by the member's next-of-kin.

    3. The Chief of Police directs a Medal of Valor posthumous award memorandum to all divisions of the Department.

| 109 Discipline, Complaints, and Commendation | Manassas Park Police General Orders | | Version: 1 |
|---|---|---|---|
| Effective Date: 12-9-2014 | By Authority of: John E. Evans, Chief of Police | By Authority of: Kimberly Alexander, City Manager | Page 24 of 24 |

4. A copy of the memorandum is forwarded to the Department of Human Resources and Administrative Division Chief, and added to the member's official personnel file.

5. The Medal of Valor recipient is recognized in the City's newsletter.

6. A photograph of the member and a synopsis of the Medal of Valor award are posted in the public lobby of the Public Safety Building in perpetuity.

Attachments:    Law Enforcement Officer's Procedural Guarantees.
                   Employee Counseling/Discipline Record.

Reference:    Code of Virginia, Sections: 9.1-500 through 9.1-507. Available on line.

Index as:
| | |
|---|---|
| Internal Affairs | Commendation |
| Internal Investigations | Employee of the Quarter |
| Complaints | Employee of the Year |
| Citizen Complaints | |
| Formal Complaints | |

### ADMINISTRATIVE PROCEEDING RIGHTS
### LAW ENFORCEMENT OFFICERS PROCEDURAL GUARANTEES
*CODE OF VIRGINIA (Section 9.1-500)*

1.   My name and rank is:

2.   The following individuals will be present during questioning:

    I.

    II.

3.   The nature of this investigation is:

**If this investigation finds that you violated one or more of the above-referenced general orders, disciplinary action up to and including termination of your employment may be taken against you. In addition, by virtue of your alleged violation of the above-referenced General Orders, you are also alleged to have violated Section VI.2.A.12 of the City of Manassas Park Personnel Policy, which lists as a cause of disciplinary action the violation of City personnel policies, as set forth in the Personnel Policy, or any other City rules, regulations, policies or procedures.**

### ACKNOWLEDGMENTS

- I am being interviewed as part of an official investigation by the Police Department. I am being asked questions specifically related to the performance of my official duties or fitness for office.

- Any statement(s) made in the course of this interview may be used as the basis for administrative charges and appropriate disciplinary action.

- I do not have the right to counsel during this interview.

- I am required to answer all questions truthfully and fully.  I am advised that my answers constitute an official police report.

- If I refuse to answer questions asked of me, I will be ordered to answer the questions.  If I persist in my refusal, after the order has been given to me, I am advised that such refusal constitutes a violation of the Rules and Regulations of the Police Department and may serve as a basis for my discharge.

- I am further advised that any statement(s) made by me during the course of this interview cannot be used against me in a subsequent criminal proceeding.  However, these statements may be used against me in relation to subsequent departmental charges.

*I acknowledge that I have been advised of and understand the above rights.*

_____        _____
Signature                               Date and Time

_____
Witness

PD-8



# POLICE DEPARTMENT
## *City of Manassas Park*
329 Manassas Drive
Manassas Park, Virginia 20111
(703) 361-1136 • Fax (703) 330-2517
www.manassasparkpolice.com

*JOHN C. EVANS, COLONEL*
*Chief of Police*

### ADMINISTRATIVE PROCEEDING RIGHTS
### LAW ENFORCEMENT OFFICERS PROCEDURAL GUARANTEES
#### *CODE OF VIRGINIA (Section 9.1-500)*

1.  My name and rank is: _____

2.  The following individuals will be present during questioning:

    I.   _____

    II.  _____

3.  The nature of this investigation is:

    _____
    _____
    _____
    _____

### ACKNOWLEDGMENTS

_____ I am being interviewed as part of an official investigation by the Police Department. I am being asked questions specifically related to the performance of my official duties or fitness for office.

_____ Any statement(s) made in the course of this interview may be used as the basis for administrative charges and appropriate disciplinary action.

_____ I do not have the right to counsel during this interview.

_____ I am required to answer all questions truthfully and fully.  I am advised that my answers constitute an official police report.

_____ If I refuse to answer questions asked of me, I will be ordered to answer the questions.  If I persist in my refusal, after the order has been given to me, I am advised that such refusal constitutes a violation of the Rules and Regulations of the Police Department and may serve as a basis for my discharge.

_____ I am further advised that any statement(s) made by me during the course of this interview cannot be used against me in a subsequent criminal proceeding.  However, these statements may be used against me in relation to subsequent departmental charges.

*I acknowledge that I have been advised of and understand the above rights.*


_____         _____         _____
        **Signature**                   **Date and Time**                 **Witness**

General Order 109
PD-8

# Manassas Park Police Department

## CITIZEN COMPLAINT FORM

File complaints about police department employees on this form.  Return the completed
form to the duty shift supervisor (Lieutenant/Sergeant) or Patrol Commander at:
Manassas Park Police, 329 Manassas Drive, Manassas Park, VA 20111

| INVOLVED OFFICER/EMPLOYEE(S) INFORMATION | | |
|---|---|---|
| Name: | | |
| Name: | | |
| **PERSON MAKING THE COMPLAINT** | | |
| Name: | Phone: | |
| Address: | Phone: | |

**Please provide as much information about the reason you were contacted by the
officer/employee.  Specific information about the date, time, and location will help in
locating computer-based information if you do not know the officer/employee's name.**

| Date of Contact: | | Approximate Time: | |
|---|---|---|---|
| | | | AM / PM |
| Location Contacted: | | | |

**Reason for the Complaint:  (Attach additional pages if needed)**

**Witness Information:**

| Name: | Phone: |
|---|---|
| Address: | |
| | |
| Name: | Phone: |
| Address: | |

Submitted By: _____     Date: _____

**AFFIRMATION**

I, _____, do hereby affirm that the information provided by me is true and complete to the best of
my knowledge and belief.  I understand that any false, misleading, or untrue statements, accusations, or allegations herein made by me,
in relation to this complaint, either orally or in writing, to any person or persons investigating this complaint, may subject me to civil
suit and/or criminal prosecution.

_____             _____
**SIGNATURE**                                    **DATE**

  **COMPLAINT RECEIVED BY:**_____   **DATE**_____

PD - 28

# Manassas Park Police Department

## FORMULARIO DE QUEJA DEL CIUDADANO

Favor de presentar quejas sobre los empleados del departamento de policía en este formulario.
Una vez que haya llenado el formulario, sírvase devolverlo al supervisor de turno
(Teniente/Sargento), o al Comandante de la Guardia en el departamento de policía de Manassas
Park, ubicado en: 329 Manassas Dr., Manassas Park, VA 20111

| INFORMACION DEL(LOS) POLICIA(S)/EMPLEADO(S) IMPLICADO(S) | |
|---|---|
| Nombre: | |
| Nombre: | |
| **INFORMACION DE LA PERSONA PRESENTANDO LA QUEJA** | |
| Nombre: | Teléfono: |
| Dirección: | Teléfono: |

**Por favor proporcione tanta información como sea necesaria sobre la razón por la cual fue contactado por el policía/empleado. La información específica sobre la fecha, la hora y la ubicación ayudará a encontrar información computarizada si usted no sabe el nombre del policía/empleado.**

| Fecha de Contacto: | | Hora Aproximada: | AM / PM |
|---|---|---|---|
| Lugar de Contacto: | | | |

**Motivo de la queja: (favor de adjuntar páginas adicionales si fuese necesario)**




**Información del testigo:**

| Nombre: | Teléfono: |
|---|---|
| Dirección: | |
| | |
| Nombre: | Teléfono: |
| Dirección: | |
| | |

Presentado por _____   Fecha _____

**DECLARACION**

Yo, _____, por medio de la presente declaro que la información que he proporcionado es completa y verdadera a mi leal saber y entender. Entiendo que cualquier declaración que sea falsa, errónea o incierta, acusaciones o alegaciones hechas por mí aquí, en relación a esta queja, ya sea de forma oral o escrita, a cualquier persona o personas investigando esta queja, me pueden someter a la interposición de una demanda civil y/o de una acción judicial.

FIRMA _____   FECHA _____

QUEJA RECIBIDA POR: _____   FECHA _____

PD - 28

General Order 109

# MANASSAS PARK POLICE DEPARTMENT
# ORAL REPRIMAND/VERBAL COUNSELING REPORT FORM

<u>Instructions</u> This form shall serve as an informal record of the contents of an oral reprimand/verbal counseling session.

- **The employee shall be advised that such an informal record is being kept at the time of the counseling session.**
- **The employee shall be further advised that he or she has the right to review the contents of the record and submit a statement of 200 words or less if he or she disagrees with the content of this form.**
- **This form will be maintained by the supervisor and shall not be included in the employee's agency personnel file.**

Employee's Name _____

Agency/Division _____

Date of Counseling Session _____

Is this the employee's first counseling session? _____

If "no", on what dates did other counseling occur? _____

Summary of Reasons for this Counseling Session: _____

_____

_____

_____

_____

_____

Summary of Employee's Response: _____

_____

_____

_____

_____

Suggestions for Improvement or Specific Action Requested: _____

_____

_____

_____

_____

_____

Supervisor's Name: _____

(Print or Type)

_____          _____
Supervisor's Signature                              Date

_____          _____
Witness Signature                                    Date

Revised January 2011

General Order 109

# MANASSAS PARK POLICE DEPARTMENT
## Progressive Discipline Model

| | | | |
|---|---|---|---|
| Termination | Level 8 | Chief of Police | City Manager and/or Mayor |
| Demotion | Level 7 | Chief of Police | City Manager and/or Mayor |
| Administrative Decrease | Level 6 | Chief of Police | City Manager and/or Mayor |
| Withholding of a Merit Increase | Level 5 | Chief of Police | City Manager and/or Mayor |
| Suspension From Duty | Level 4 | Chief of Police | City Manager and/or Mayor |
| Written Reprimand | Level 3 | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor |
| Employee Counseling/Discipline Record | Level 2 | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor |
| Verbal Reprimand | Level 1 | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor | Chief of Police, Major, Captain, Lt. Sgt., Non-Sworn Supervisor |
| ↑ Progressive Disciplinary Action | ↑ Level | ↑ Supervisory Approval Level | ↑ Supervisory Implementation Level |

Revised January 2011

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 1 of 9 |

**PURPOSE:**
The purpose of this regulation is to outline, as a general guide, minimum acceptable standards of personal conduct, both on and off-duty, and areas of responsibility, both on and off duty, for members of the Department.

**POLICY:**
**The conduct of a sworn or non-sworn member, on or off-duty, reflects directly upon the Department. A member must, at all times, conduct himself in a manner that does not bring discredit to himself, the Department, or the City.**

**DISCUSSION:**
Any member of the Department is the most conspicuous representative of government of the City of Manassas Park. To the majority of people, he is a symbol of stability and authority upon whom they can rely. A member's conduct is closely scrutinized and when his actions are found to be excessive, unwarranted, or unjustified, they are criticized far more severely than comparable conduct of persons in other walks of life.

**PROCEDURE:**
I.      General Responsibilities.
      A.      Knowledge of Laws, Ordinances, Regulations and Policies.
            1.      Every member is required to establish and maintain a working knowledge of all laws and ordinances in force in the City and State, all General Orders and Standard Operating Procedures of the Department, and the regulations outlined in the City of Manassas Park Employee Personnel Policy.
            2.      In the event of improper conduct or violation of any portion of these rules and/or laws, it will be presumed that the member was familiar with the standard. Violation of any law, ordinance, General Order, Standard Operating Procedure, or City personnel regulation may result in disciplinary action.
      B.      Abeyance of Laws, Ordinances, and Regulations.
            1.      Every member will observe and obey all laws and ordinances, all rules and regulations of the City of Manassas Park, and all General Orders and Standard Operating Procedures of the Department.
      C.      Performance of Duty.
            1.      All members shall perform their duties as required or directed by law, departmental rule, policy, order, or by order of a superior officer.
            2.      All lawful duties required by competent authority shall be performed promptly.
      D.      Discredit to the Department.
            1.      All members shall conduct their private and professional lives in such a manner as to avoid bringing discredit upon the City or the Department. Loyalty to the Department and to associates is an important factor in Department morale and efficiency.
            2.      Members shall maintain a loyalty to the Department and their associates as is consistent with law and personal ethics.
      E.      Duty to Report Violations.
            1.      Any member who has knowledge of other members, individually or collectively, who are knowingly or unintentionally violating any laws or statues, ordinances, or rules and regulations of the Department, or who disobey orders, shall immediately bring any and all facts pertaining to the matter to the attention of a supervisory or command officer.
            2.      Supervisory or command personnel contacted shall then take appropriate action, in accordance with existing laws and regulations. Any member may by-pass the official chain of command and directly advise the Chief of Police of the violation.

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 2 of 9 |

F.    Preservation of Peace and Protection of Life and Property.
      1.    It shall be the duty of each sworn officer of the Department to:
      a.    Preserve the public peace.
      b.    Protect life and property.
      c.    Enforce and uphold the laws of the Commonwealth of Virginia and the ordinances of the City of Manassas Park.

G.    Standards of Conduct.
      1.    Unbecoming Conduct.
      a.    Members shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department.
      b.    Member shall not bring disrepute, or reflects discredit upon the Department, or which impairs the operation or efficiency of the Department or member.
      2.    Immoral Conduct.
      a.    Members shall maintain a level of moral conduct in their personal and business affairs that is in keeping with the highest standards of the law enforcement profession.
      b.    Members shall not participate in any activity involving moral turpitude that impairs their ability to perform their duties or causes the Department to be brought into disrepute.

H.    Associations.
      1.    Members shall avoid regular or continuous associations or dealings with a person or persons whom they know, or should know, are persons under criminal investigation or indictment or who have a reputation in the community or the Department for present involvement in felonious or criminal behavior, except as necessary for the performance of official duties or where unavoidable because of other personal relationships of the employees.

I.    Cooperation/Coordination.
      1.    Members shall coordinate their efforts with all other employees of the Department and City agencies, with the objective of ensuring maximum achievement and continuity of purpose through teamwork.
      2.    All members are charged with the responsibility of fostering and maintaining a high degree of cooperation both within the Department, and all other agencies.

J.    Personal Contact Information.
      1.    Members shall, at all times, keep the Department informed of their current address and telephone number. This notification will occur within five working days of any change.

K.    Assistance to Fellow Officers.
      1.    No officer shall fail to aid, assist, or protect a fellow officer to the full extent of his capability, in time of need, in accordance with established procedures.

L.    Obligation to Duty.
      1.    Officers of the Department are always subject to duty, although periodically relieved from its routine performance.
      2.    They shall, at all times, respond to the lawful orders of superior officers and other proper authorities as well as requests for police assistance from citizens. Proper police action must be taken whenever required.
      3.    Lawful orders from a superior officer to any member of the department may be delivered by a member designated by the superior officer for that purpose. Members shall recognize such orders as coming from the superior officer.

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 3 of 9 |

    4.    All members of the Department shall, at all times, respond to the lawful orders of police officers and other supervisors. All members of the Department shall respond to requests for assistance from citizens.

    5.    Officers assigned to special duties are not relieved from taking proper action outside the scope of their specialized assignment when necessary.

M.    Reporting for Duty.

    1.    Members shall report for duty at the time and place required by assignment or orders and shall be properly uniformed, equipped, and prepared to assume duty.

    2.    They shall give their undivided attention to orders, instructions, and any other information that may be disseminated.

N.    Inspections.

    1.    Inspections of a member's dress, uniform, equipment, or assigned City vehicle may be made at any time by competent authority.

    2.    Such inspections shall include, but are not limited to, City vehicles, examination of lockers, desks, or any other space on departmental premises used by any employee.

    3.    Members are reminded they are subject to searches as a condition of employment.

O.    Human Relations.

    1.    All members are expected to perform their duties in an efficient, courteous, and orderly manner, employing patience and good judgment at all times.

    2.    All members shall refrain from harsh, profane, or insolent language or acts, and shall be courteous and civil in their dealing with others.

    3.    Members shall not use racial, ethnic, sexual, religious, or gender based slurs. They shall use respectful, civil forms of address to all persons, regardless of their lifestyle.

    4.    Displays of bias toward any person on account of race, sex, religious preference or life style shall be considered unbecoming conduct.

    5.    During the course of their normal duties, police officers are sometimes subjected to obscene gestures, name calling, harsh or rude language from citizens. Generally, these type of communications are protected by the First Amendment and cannot be used as the sole basis for criminal prosecution.

    6.    This does not imply that officers cannot arrest a person under the provisions of 18.2-416, Code of Virginia ("Curse and Abuse"). The Supreme Court defined "fighting words" as those words which by their very utterance inflict or tend to incite an immediate breach of the peace." Federal and State court decisions reveal four generally accepted principles that can assist officers in deciding whether to arrest for speech directed to them.

        a.    Direct threats to officer safety generally constitute "fighting words" and are not constitutionally protected speech.

        b.    Speech that clearly disrupts or hinders the officer in the performance of duty is not constitutionally protected speech.

        c.    Obscene gestures, name calling, harsh or rude language not directed at officers or any other person, generally is protected speech under the First Amendment to the Constitution and does not constitute a crime.

        d.    The Supreme Court has determined that professional law enforcement officers are expected to exercise greater restraint in their response to "fighting words" than the average citizen.

II.    **Sexual Harassment.**

    A.    Sexual Harassment is a form of sex discrimination. Like discrimination on the basis of race, color, religion, national origin, age or handicap, it is a violation of Title VII of the Civil Rights Act of 1964, as amended, and shall not be tolerated. It shall be the policy of the Police Department that

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 4 of 9 |

        sexual harassment is prohibited in any form.

- B.   Unlawful sexual harassment includes, but is not limited to, any unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature that are made a condition of any employment decision affecting such individuals (e.g., assignment training, or advancement).
- C.   Unlawful sexual harassment also includes any unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature, which create an offensive, hostile, or intimidating work environment.
- D.   The use of signs, pictures, slogans or excerpts of periodicals are examples of some items that are considered to affect the employee's work environment.
- E.   Cooperation in preventing this type of conduct is required at all levels and positions within the Police Department.
- F.   Nothing in this General Order shall amend or supersede the sexual harassment policy found in the Manassas Park City Employee Personnel Policy.

**III.**   **Aid to Citizens.**
- A.   While on duty, members shall aid and/or assist citizens within the City whenever such aid or assistance appears to be called for, and is not in a conflict with the general principles of law enforcement, or in violation of legal statutes or departmental rules and regulations.
- B.   Officers shall provide general and emergency assistance to highway users to include, but not limited to:
    1.   General information and directions.
    2.   Jump starting of vehicles, when appropriate.
    3.   Arrange for towing, gasoline delivery or mechanical help.
    4.   Arrange for or provide transportation within the City (transports out of the City must be approved by a supervisor).
    5.   Assist with the removal of citizens and personal items from hazardous areas to a safe location.
- C.   When rendering assistance, officers should remain on the scene until help has been requested, hazardous situations are neutralized, and ECC directs the officer to leave for an assignment or at the direction of a supervisor. Additionally, the officer is required to render all possible assistance to citizens who wish to make any report in accordance with established policies and procedures.
- D.   In an off-duty status, a member has a professional obligation to act in a bona fide emergency situation which may be encountered or where assistance is requested.

**IV.**   **Public Conduct.**
- A.   Members shall be courteous and orderly in their dealings with the public. When meeting in public, officers shall conform to normal courtesy standards. Supervisory officers shall be addressed by rank when conversing in formal and/or official surroundings.
- B.   Identification as a Law Enforcement Officer.
    1.   Except when impractical or not feasible or where identity is obvious, officers shall identify themselves by displaying the official badge and/or identification card before taking action.
    2.   Upon request of a citizen, officers shall willingly supply name and employee identification number in a courteous manner.
- C.   Public Availability.
    1.   Members shall be immediately and readily available to the public during duty hours. Concealment may be employed for police purposes only and not to avoid this

responsibility.

D. Military Honors.
   1. Uniform members shall render full military honors to the National Anthem and Colors at appropriate times.
   2. Members in civilian dress shall render proper civilian honors to the National Anthem and Colors at appropriate times.

E. Training.
   1. All members shall attend all training, as assigned, at the direction of the Chief of Police, or competent authority. Such attendance is considered a duty assignment.

F. Standby Duty.
   1. An officer who is placed on standby duty shall furnish the Emergency Communications Center with the location and/or telephone number where he can be immediately contacted.

G. Physical Fitness, Medical Examinations.
   1. The role of a police officer often demands quick response to situations requiring physical exertion after long periods of sedentary activity. The safety of the general public and individual officers demands that officers maintain themselves in good physical condition regardless of assignment. Poor physical condition, such as obesity, is as much a detriment to the Department as improper demeanor or unkempt uniform appearance. All officers are encouraged to keep fit and to undertake such programs of exercise as may be required to do so. All officers shall have physical examinations conducted by a designated City agency, as required.

H. Liability Admission.
   1. Members of the Department will normally reframe from, or use extreme caution, in expressing opinions or admitting liability on the part of the City to unauthorized members of the public.

I. Establishing Elements of Violation.
   1. The existence of facts confirming a violation of law, ordinance, rule or regulation is all that is necessary to support any allegation for a charge under this section. It is not necessary that formal complaints be filed or sustained.

J. Truthfulness.
   1. When questioned by competent authority, members shall give complete and honest answers to any question related to the performance of their official duties or their fitness to hold public office.

K. Telephone communication.
   1. Members shall maintain a normal standard of courtesy at all times during any telephone communication.
   2. Efficient, courteous, and polite telephone communication is an essential component of the Department's public relations efforts, and shall be maintained by all members.
   3. Members shall identify themselves using their name, title, Manassas Park City Police Department and such other applicable information, during telephone communication with the public.
   4. Members shall make return telephone calls promptly.

L. Voice Mail System.
   1. Each member with an assigned desk telephone is also assigned a voice mail system in order to provide the member with an efficient reliable system for receiving telephone messages.
   2. Members shall maintain a normal standard of courtesy in all voice mail greeting

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 6 of 9 |

messages.

3.   The member's voice mail greeting shall include, at a minimum.

    a.   The member's name, along with his rank or title.

    b.   Manassas Park City Police Department.

    c.   The member's division or section assignment.

    d.   An instruction to the caller, requesting his name, telephone number and a brief message to be recorded after the signal tone. The member's assurance that he will make a return call as soon as possible.

    e.   Such other information as may be appropriate.

**V.   Prohibited Activities**

A.   Loitering, Sleeping, and Loafing on Duty.

    1.   No member shall loiter, sleep, or loaf on duty, or in any other manner shirk responsibilities in the performance of duty.

B.   Malingering.

    1.   A member shall be absent from duty because of sickness only when suffering from an illness or injury, which would prevent the proper performance of duty. Members shall not feign sickness or disability, nor attempt to deceive a supervisor concerning their physical or medical condition.

    2.   Notification of the use of sick leave will be made to the employee's supervisor prior to the employee's scheduled reporting time.

C.   Use of Tobacco Products.

    1.   Members shall not use any tobacco product while on duty, in direct contact with the public, or in any city owned vehicle. Other applicable tobacco use regulations may be found in the City of Manassas Park Personnel Policy.

D.   Consumption and Purchase of Intoxicants.

    1.   Members shall not consume intoxicants while off duty to the extent that evidence of such consumption is apparent when reporting for duty, or to the extent that the ability to perform duty is impaired. Members, unless in the performance of official business, shall not consume or purchase any intoxicant while on duty.

E.   Intoxication.

    1.   Members shall never be intoxicated while on duty, nor shall they ever be intoxicated in public view at any time.

F.   Intoxicants on Departmental Premises.

    1.   Members shall not bring onto or keep any intoxicants on departmental premises, except when necessary in the performance of duty. Intoxicants shall not be transported in any police vehicle, on duty or off duty, except as necessary in accordance with official duties.

G.   Personal Publicity.

    1.   Members shall not use their position within the Department to enhance or promote any private enterprise or to seek personal publicity. This provision is required to protect individual officers and the Department from potential conflicts of interest.

H.   Debts- Incurring and Payment.

    1.   Financial irresponsibility is contrary to the special public trust granted all members of the Department. To protect this trust and the integrity of the Department, members shall make every reasonable effort to pay all debts for which they are legally responsible.

I.   Accepting Gifts, Gratuities, Bribes, or Rewards, Etc.

    1.   Members shall not knowingly accept gifts, gratuities, rewards, or bribes obtained by

| 201<br>Rules of Conduct | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 7 of 9 |

virtue of their status as members of the Department. This may take the form of, but not limited to, currency, credit, meals, beverages, services, or other material benefits at a complimentary or discounted rate, or at a rate lower than offered to the general public, while on duty or by virtue of their position with the Department, unless previously approved by the Chief of Police. Knowledge of the violation is determined using the "reasonable and prudent man" approach.

2. These limitations are not intended to prohibit the acceptance of articles of negligible value that are distributed generally, nor to prohibit employees from accepting social courtesies that promote good public relations.

J. Other Transactions.

1. Members are prohibited from buying or selling anything of value from or to any complainant, suspect, witness, defendant, prisoner, or other person involved in any case which has come to their attention, or which arose out of their departmental employment except as may be specifically authorized by the Chief of Police.

K. Free Admission and Passes.

1. Members shall not solicit or accept free admission to theaters and other places of amusement for themselves or others except in the line of duty.

L. Disposition of Unauthorized Gifts, Gratuities, Etc.

1. Any unauthorized gift, gratuity, loan, fee, reward, or other material benefit which comes into the possession of any member shall be forwarded to the Office of the Chief of Police, along with a written report explaining the circumstances. The Chief of Police shall determine whether to arrange for the return of the gift and/or to pursue an investigation against the giver. The members involved shall be notified in writing of the disposition. This section shall not apply to exemptions as provided in 15.2-1710, Code of Virginia.

M. Commercial Testimonials.

1. Members shall not permit their names or photographs to be used in endorsing any product or service connected with law enforcement without the permission of the Chief of Police, or allow their names or photographs to be used in any commercial testimonial, which alludes to their position or employment with the Department.

N. Membership in Organizations.

1. Except for Armed Forces Reserve component, members shall not become affiliated with any organization that in any way would prevent its members from rendering proper and efficient service to the Department.

O. Political Activity.

1. Members shall not use their position in the Department to endorse political candidates, nor shall they use their position to solicit, directly or indirectly, funds or other services in support of a political issue. Members shall not use their official capacity in any manner to influence the outcome of any political issue.

2. Nothing in this section is intended to prevent members from exercising their First Amendment Rights to free speech.

P. Personal Preferment,

1. Members shall not seek the influence or intervention of any person outside the Department for purposes of personal preferment, advantage, transfer, and advancement or to gain favor or preferential treatment of any kind.

Q. Shopping While on Duty.

1. Members shall not shop or trade while on duty nor devote any of their on-duty time to any activity other than that related to police work, unless approved by their supervisor. This does not include eating or replenishing necessary police supplies.

| 201<br>Rules of Conduct | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 8 of 9 |

R.   Dissemination of Confidential Police Information.
    1.   Members shall not reveal police information outside the Department except as provided elsewhere in this manual, or as required by law or competent authority.
    2.   Specifically, information contained in police records, other information ordinarily accessible only to members and, names of informants, complainants, witnesses and other persons known to the police are considered confidential information.
    3.   Violation of the security of this type of information reflects gross misconduct.

S.   False Police Reports.
    1.   Members shall not make or cause to be made any false report, written or not. This prohibition includes any report, statement, or testimony given in regard to an Internal Affairs Investigation.

**VI.   Orders.**

A.   Insubordination.
    1.   Except as otherwise stated herein, defiance of lawful authority, or disobedience to orders, constitutes insubordination. Insubordination may also include disrespectful, insolent, or abusive language and/or acts toward a supervisor, failure or refusal to obey a lawful order given by a supervisor and ridiculing the orders of supervisors (whether in their presence or not).

B.   Unlawful Orders.
    1.   No member shall knowingly issue any order that is in violation of any law, statute, or ordinance, or departmental rules and regulations.

C.   Manner of Issuing Order.
    1.   Members shall obey any lawful order of a superior including any order relayed from a superior by an employee of the same or lesser rank. Orders shall be issued in a clear and civil tone, in an understandable manner and in the interest of departmental business.

D.   Disobedience to Unlawful Orders.
    1.   No member is expected to, or shall obey, any order that he knows to be contrary to local, state, or federal law or ordinance.
    2.   At the time the unlawful order is issued, the employee shall advise the issuing authority of its illegality.
    3.   Should that authority persist in demanding compliance, a member of superior rank or status to all parties involved should be summoned to decide the controversy.
    4.   Responsibility for refusal to obey rests with the subordinate, and he shall be required to justify his actions.

E.   Obedience to Improper Orders.
    1.   Members who receive orders that they feel are unjust or contrary to departmental rules and regulations, are required to obey the order, but may then proceed to appeal that order at the earliest opportunity.

F.   Conflicting Orders.
    1.   Upon receipt of an order that is in conflict with any previous order or instruction, the affected member will respectfully advise the person issuing the superseding order of the conflict.
    2.   Responsibility for countermanding the original instruction then rests with the individual issuing the superseding order.
    3.   If the superseding command is held in force, it shall be obeyed, thereby rendering all previous orders ineffective. Orders will be countermanded only when in the best interest of the Department.

G.   Reports and Appeals-Unlawful or Improper Orders.

| 201<br>Rules of Conduct | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>04/20/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 9 of 9 |

      1.    A member receiving an unlawful, unjust, or improper order shall, at the first opportunity, and prior to the conclusion of the tour of duty in which the order was given, report the fact in writing to the Chief of Police through official channels.

      2.    This report shall contain the facts of the incident and the action taken. Appeals for the release from such orders may be made at the same time.

H.    Care of Buildings, Vehicles, and Equipment.

      1.    Members shall not mar, mark, deface, or destroy any surface on any departmental building, vehicle, or other piece of department equipment unless it is in the proper execution of duty with the consent of competent authority. Nor shall any member engage in any act of vandalism that would render any portion of the facility inoperable or unsightly.

I.    Defacing Notices.

      1.    Members shall not mark, alter, or deface any posted notice of the Department unless ordered by competent authority. No inflammatory, discrediting, or derogatory notices will be posted at any time.

J.    Alteration and Repair of Issued Weapons.

      1.    No member, except qualified Department personnel or Criminal Justice Academy Firearms Unit members, shall alter or repair any weapon issued by the Department.

      2.    No weapons issued by the Department shall be taken to an outside source for alterations or repairs of any form without the expressed permission of the Department Chief Firearms Officer.

      3.    Officers shall be responsible for the care, security and maintenance of Department issued weapons.

K.    Wearing of Police Uniform During Court Appearances.

      1.    Officers shall not attend any court in any jurisdiction attired in a Manassas Park City Police uniform, for any purpose other than testifying, or appearing as a defendant, if the purpose of their attendance does not relate to acts that occurred during the performance of official duties.

L.    Wearing of Police Uniform While Suspended From Duty.

      1.    Officers shall not wear the police uniform while suspended from duty.

| 310<br>Grievance<br>Procedures | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>05/02/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 1 of 2 |

**PURPOSE:**
To provide a formal method that allows members to resolve their grievances with management fairly and expeditiously.

**POLICY:**
Members should have an effective means by which their grievances may be fairly and objectively reviewed. The procedures specified in General Order 301 and the City Employee Personnel Policy provide an avenue for members to address grievances. These procedures should be followed for seeking relief or redress of grievances. The statements of this General Order are supplemental to the procedures set forth in the City Employee Personnel Policy.

**DISCUSSION:**
N/A.

**PROCEDURE:**
I.  **Responsibilities**
    A.  All members of the Department are responsible for fully utilizing the Department's chain of command to seek out solutions to problems prior to the filing of a grievance.
    B.  Supervisors are responsible for the timely solution of problems brought to their attention and within their scope of authority. When a supervisor is unable to resolve a formal grievance or determine the solution of an issue, he is to advise the member of the next step in the process. The City Manager or designee determines if an issue can be contested.
    C.  The Director of Human Resources shall be notified as soon as possible when a grievance is filed.
    D.  The Chief of Police or designee coordinates all grievance procedures with the Director of Human Resources.
    E.  The Chief of Police or designee may conduct an annual analysis of grievances.
    F.  All original documentation involved in the grievance shall be forwarded to and maintained by the Director of Human Resources or designee.
    G.  Copies of all documentation involved in the grievance maintained by the Department shall be kept secured in a locked file located in the office of the Chief of Police and/or Human Resources.
    H.  The Chief of Police may take steps to minimize the causes of grievances if, through analysis, it is determined that justification for remedial action exists and/or a trend is developing.

II. **Filing Procedures**
    A.  Members who decide to file a formal grievance should do so in accordance with the City Employee Personnel Policy.
        1.  The grievance process is applicable to all full time, regular members of the Department.
        2.  The grievance process does not apply to part-time and volunteer members.
    B.  Whenever a dismissal, demotion, suspension without pay, or transfer for disciplinary reasons has been imposed upon a sworn member of the Department, the member has the option of utilizing the grievance procedure set forth in the City Employee Personnel Policy or proceeding as set forth in the Code of Virginia Chapter 5, Sections: 9.1-500 through 9.1-507: Law Enforcement Officers' Procedural Guarantees.
        1.  Sworn members must note their selection of a specific procedure in the first written request for a hearing or in the statement of the grievance.
        2.  Non-sworn members must proceed as set forth in the City Employee Personnel Policy.
    C.  The sworn or non-sworn member filing the grievance completes the City of Manassas Park Grievance Form, with the following information included:
        1.  A written statement of the grievance and the facts upon which it is based.
        2.  A written allegation of the specific wrongful acts and harm done.

| 310 Grievance Procedures | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date: 05/02/2016 | By Authority of:<br>John C. Evans (Chief of Police) | Page 2 of 2 |

        3.     A written statement of the remedy or adjustment sought.

D.    The City of Manassas Park Grievance Form is forwarded through the appropriate chain of command in accordance with the timetable set forth in the City Employee Personnel Policy.

E.    Supervisors receiving a written grievance must respond by the following procedures:

        1.     Acknowledges receipt by signing their name and entering the date and on the appropriate space on the City of Manassas Park Grievance Form.

        2.     Analyzes the facts or allegations.

        3.     When applicable, affirm or deny, in writing, the allegations in the grievance.

        4.     When possible, identify the remedy or adjustments, if any, to be made.

F.    The Chief of Police, or, if necessary, the City Manager or designee responds, in writing, according to the timetables set forth in the City Employee Personnel Policy.

| 601 PATROL PROCEDURES | Manassas Park Police General Orders | Version: 1 |
|---|---|---|
| Effective Date: 03/11/2018 | By Authority of: John C. Evans, Chief of Police | Page 1 of 10 |

**PURPOSE:**
To standardize the organization, administration and operations of the patrol function of the department.

**POLICY:**
The Department provides 24-hour per day patrol coverage. The Chief of Police or his designee is responsible for ensuring allocation and distribution of patrol officers that is consistent with recent analyses. Patrol supervisors are responsible for ensuring the timely deployment of available patrols according to current conditions and requirements. Patrol shift changes should ensure continuity in the number of units on active patrol.

**DISCUSSION:**
The patrol function is a primary law enforcement activity that embraces much more than the act of patrolling. Patrol is a generalized function in which officers engage in a wide variety of activities, including, but not limited to, traffic control and enforcement, answering complaints, conducting preliminary investigations, conducting limited follow-up investigations, crime prevention and detection, community relations, warrant service and process, and enforcement of criminal laws.

**PROCEDURE:**
I.     **Organization and Administration**
  A.     The patrol section of the Department is located within the Patrol Services Division. Patrol functions include:
    1.     Preventative patrol (including inquiry and inspection activity oriented toward):
      a.     Prevention of crimes and accidents.
      b.     Maintenance of public order.
      c.     The discovery of hazards and delinquency causing situations.
    2.     Crime prevention activities.
    3.     Response to calls for services.
    4.     Investigation of crimes, offenses, incidents and conditions, including arresting offenders.
    5.     Traffic direction and control.
    6.     Regulation of certain businesses or activities as required by law.
    7.     Maintenance of public order.
    8.     Provision of emergency services.
    9.     Inspiring the confidence and respect of the community.
    10.    Reporting of information to the appropriate organizational components or other agencies.
  B.     Incidents requiring the presence of a supervisor (also see General Order 107):
    1.     The Duty Supervisor is notified, must proceed to, and assume command of the following types of incidents:
      a.     Serious injury to a Department member.
      b.     Accident involving a City vehicle.
      c.     Major crimes including murder, rape, robbery and malicious wounding.
      d.     Barricade/hostage situations, (See General Orders 711 and 712.)
      e.     Disasters, catastrophes or severe weather producing emergency conditions.
      f.     Incidents involving a death or the possibility of a death.
      g.     Complaints or incidents involving allegations against Department members.
      h.     Other incidents where requested by officers on the scene.
    2.     When multiple incidents occur simultaneously, supervisors must prioritize their response.

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 2 of 10 |

The ranking supervisor on the scene remains in charge unless relieved.

C.    Cooperation with other sections.

    1.    The patrol section encourages and supports the exchange of information with specialized sections or units for the purpose of coordinating performance.

    2.    Supervisors of all sections are responsible for coordinating the communication of information in ways such as:

        a.    Attendance of selected personnel at patrol roll calls or staff meetings and vice versa.

        b.    Exchange of daily bulletins, flyers, or other notices.

        c.    Staffing of new directives or procedures by allowing review by members in unaffected sections.

D.    Shift assignments.

    1.    Patrol shift assignments are scheduled on a modified 12-hour permanent shift plan. There are four patrol squads. Selective Traffic Enforcement and Community Policing Officers are scheduled separately and utilized as a supplement to patrol as needed.

    2.    The working cycle assigns officers to work one-week on Monday, Tuesday, Friday Saturday and Sunday (five-day work week). The next duty week would require that the officers only work on Wednesday and Thursday (two day work week).

    3.    Shifts overlap occurs from time to time as a result of special assignments, details, and Lieutenants working approved overlapping or modified schedules. Patrol Lieutenants and sergeants are responsible for ensuring continuity in the number of units on active patrol at shift change.

    4.    Generally one supervisor (Lieutenant or Sergeant) and two patrol officers are on duty for each individual shift. Minimum staffing requires two officers on duty during day-shift and three officers on duty during night-shift at any given time within the City. Supervisors should consider any unusual circumstances when determining minimum staffing for an upcoming tour of duty and make notifications accordingly. Occasional under staffing is acceptable, provided reasonable efforts are made to acquire the minimum staffing level on an overtime basis.

    5.    The Duty Supervisor is responsible for ensuring adequate patrol officers are assigned in cases of sick leave or other unanticipated absence, in accordance with General Order 303.

    6.    Department shift rosters and the Vehicle Status Board are posted in the Roll Call Room and Communications Office.

E.    Area assignments.

    1.    The Duty Supervisor (highest ranking officer on duty) has the authority and responsibility to oversee all aspects of Department functions to ensure that appropriate police response is initiated and concluded in all occurrences requiring police activity.

    2.    The Squad Supervisors assign officers to special detail/traffic enforcement, as needed.

    3.    Officers must perform their duties, tasks, and assignments given to them by their supervisor with the utmost diligence.

    4.    Officers have a primary responsibility for the protection of life and property in Manassas Park and must patrol the whole City, unless otherwise assigned to a detail.

F.    Area and resource analysis.

    1.    The Chief of Police or designee collects and evaluates data on the hourly distribution

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 3 of 10 |

of incidents and based on this data and data pertaining to reporting areas makes an annual recommendation for any reallocation or redistribution of patrol resources as necessary. This ensures the proportional distribution of resources by time and place of incidents. The purpose of this effort is to ensure that:

    a.    Sufficient patrol officers are assigned to each shift to equitably distribute workload and provide prompt and efficient police response.

    b.    The number of patrol areas on each shift is proportionate to the workload occurring on each shift.

    c.    The boundaries of each patrol area are based on reporting areas and equalized workload.

    d.    Patrol assignments may be changed at any time by authority of the Chief of Police or designee.

II.    **Operations**

    A.    Roll call.

        1.    Officers must, unless excused by a competent authority, report to roll call at the time and place specified for the start of their tour of duty. They must be properly uniformed and equipped to immediately assume their duties. Upon the completion of roll call, officers immediately set out for their patrol area unless excused by the Duty Supervisor.

        2.    Roll call is established to accomplish at minimum, the following five basic tasks:

            a.    Briefing officers with information regarding daily patrol activity, with particular attention given to unusual situation and changes in the status of wanted persons, stolen vehicles, and major investigations.

            b.    Assigning patrol areas.

            c.    Notifying officers of changes in schedule and assignments.

            d.    Notifying officers of new directives and conducting necessary training.

            e.    Evaluating officers' readiness to assume patrol duties.

        3.    Emergency Communication Specialist (ECS) or others may be required to report to roll call in conjunction with specified squad assignments. Supervisors of other sections are encouraged to send members to roll call sessions frequently to use the roll call format for information exchange between sections.

        4.    The Asst. Chief, Captain, or Training Supervisor, through coordination with the Chief of Police, schedules periodic roll call training sessions.

    B.    Unassigned time.

        1.    Specific instructions for the use of unassigned time may be given at roll call. Lieutenants and/or Sergeants should make a distinction between those assignments where officers should remain available for calls for service and those assignments that require the officer to remain unavailable. Such information should be explained to the Emergency Communications Center (ECC).

        2.    Officers are expected to maximize the use of unassigned time toward the accomplishment of the Goals and Objectives of the Department.

        3.    Effective use of unassigned time is a factor in the member's performance evaluation.

        4.    Officers will notify ECC whenever they stop by or visit personal residence or that of family members while on-duty.

    C.    Complaint screening and call assignment. Also see General Orders 501, 502 and 503.

        1.    ECC members answering calls for police services ascertain all relevant information to

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 4 of 10 |

ensure the following:
- a. The safety of all persons who are directly involved.
- b. To assist in the immediate successful completion of the police mission.
- c. The information necessary to accomplish subsequent investigations.
- d. To obtain the information that may be administratively required.

2. Guidelines for the number of officers to assign for response to specific occurrences are posted in the Communications Section of the General Duty Manual. Additional instructions may be provided by supervisors or from on scene officers. Generally, the following occurrences require response from at least two officers:
- a. An assault on an officer or other member of the Department.
- b. On-scene arrest.
- c. Resistance to arrest.
- d. Use of force.
- e. A crime in progress.
- f. A fleeing suspect.

D. Use of informants by patrol officers. Also see General Order 622.
1. Patrol officers occasionally develop informants, who are capable of assisting with criminal investigations.
2. Patrol officers who wish to use a confidential informant for active participation in an investigation or pay for information from the confidential informant fund should notify their supervisor and have the confidential informant registered through the Chief of Police or designee.

E. Reporting, investigation, and other paperwork.
1. Officers respond to calls for police service promptly, efficiently and safely. (See General Order 621).
2. Officers, in the absence of instructions from a supervisor, are responsible for the action that they take given the available information.
3. Reports of incidents or crimes are prepared in accordance with General Order 602, and the Department requirements.
4. The Duty Supervisor is responsible for review and approval of reports and attendance paperwork prior to the end of the tour of duty. Reports should be completed during each shift prior to officers ending their tour of duty, unless extenuating circumstances arise.
5. After review by the Duty Supervisor, reports are forwarded to the Division Commander or other supervisor as designated for review.

F. Loud party/noise violations/disturbance complaint procedures.
1. Uniform application of enforcement measures is an important aspect of the Departments response to these incidents.
2. Generally, one warning is issued for known violations, and a written report is not required until a second or subsequent complaint is received.
3. Calls received of an in-progress loud party noise violation or disturbance complaint are handled as follows:
- a. Two or more units are dispatched to the area. The number of dispatched units depends on the number of available units, the nature of the complaint, and the reported behavior of the persons complained on.
- b. Responding units should, upon arrival, evaluate the observable situations, and:
  - (1) Advise the person who can be identified as having proprietary

| 601 PATROL PROCEDURES | Manassas Park Police General Orders | Version: 1 |
|---|---|---|
| Effective Date: 03/11/2018 | By Authority of: John C. Evans, Chief of Police | Page 5 of 10 |

interest in the place where the event is occurring or a complaint has been received.

    (2)    Warn the same person or others about any violations of law that are being committed and observed by the officers, unless such violations pose an immediate threat to the safety of persons.

    (3)    Take other appropriate enforcement action that is warranted in view of the circumstances, especially when such violations pose a threat to public safety.

4. Upon the receipt of a second, or subsequent complaint related to the same event, the following action should be taken:

    a.    Consistent with the safety of the officers present, and that of others, the event should be closed down and the assembled persons directed to disperse.

    b.    Necessary enforcement action should be taken to enforce the verbal order to discontinue the event and persons not in residence at that location are directed to depart the area.

    c.    Appropriate criminal charges, if warranted, should be placed against persons who, having been warned, and continue the violation(s).

        (1)    In view of the fact that judges are reluctant to sustain charges brought by police officers, in instances where public alarm is cited as the basis for charges in the absence of a citizen complainant, the complaining person should be subpoenaed.

        (2)    The complaining person should be encouraged to secure the warrant.

5. In the following instances, the primary responding officer should prepare a written report detailing the situation observed, and the action taken:

    a.    When it is necessary to return a second or subsequent time for the same complaint.

    b.    When charges are made, or a citizen complainant obtains a warrant.

    c.    At the officer's discretion.

6. When disturbance calls are being handled, officers should remember that such events have a great potential for injury to officers and others, and because participants are frequently inebriated, a great potential exists for violent escalation.

7. Because of the potential for escalation of events that require a second or subsequent response, the Duty Supervisor or designee should respond to the event unless precluded from doing so because of other duty matters.

8. Officers should remember that the most desirable approach to the abatement of a loud or disorderly condition is the voluntary compliance of those involved whenever possible.

G. Use of K-9 Units.

1. The use of the Manassas Park Police, Manassas City or Prince William County Police Department's K-9 Units or K-9 Units from other law enforcement agencies is governed by General Order 628.

H. Use of Police Helicopter Units.

1. Assistance from police helicopter units from neighboring jurisdictions may be requested upon approval of the Duty Supervisor. Requests are usually made during police emergencies such as vehicle pursuits, foot pursuits of felons or dangerous suspects or other operations where enhanced observation from the air increases public safety.

2. Fairfax County Police Department helicopter units operate in accordance with the

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 6 of 10 |

following priorities:

    a.      Priority I: Medical emergencies in Fairfax County only.

    b.      Priority II: Police emergencies in Fairfax County only.

    c.      Priority III: Medical emergencies outside Fairfax County.

    d.      Priority IV: Police emergencies outside Fairfax County.

    e.      Priority V: Routine police missions in Fairfax County only.

    f.      Priority VI: Non-Emergency missions outside Fairfax County.

3.    Virginia State Police helicopter units are available for police emergencies and non-emergency missions.

4.    Fire and Rescue personnel, who are responsible for coordinating their arrival, make requests for helicopter units for medical emergencies. The Department provides assistance for medivac operations at the direction of the appropriate scene commander.

5.    Landing zones.

    a.      Off airport/helipad landings can be the most hazardous aspect of any helicopter mission, especially into areas with which the pilot is unfamiliar. The importance of proper selection of a landing zone cannot be overemphasized.

    b.      Confined area sites. The following criteria serve as the minimum requirements for establishing a landing zone:

        (1)    Size: 50 feet by 50 feet square, completely clear of obstruction.

        (2)    Surface: Hard surface, concrete, asphalt, hard earth, and grass surface should be free of all loose debris (gravel, trash, other material).

        (3)    Slope: Any slope in the landing zone must be gradual and should never exceed fifteen degrees.

        (4)    Obstructions: Officers   establishing a landing zone must physically check a 100-yard approach and departure path. This flight path should be directly into the wind as much as possible. Approach and departure paths must be checked for any obstructions that may be hazardous to flight. Obstructions that are clearly visible and obvious from the ground may be invisible from the air. The best example of this type of hazardous obstruction is utility wires. Ground units should always relay this information to the helicopter pilot.

        (5)    Marking: Officers should mark the landing zone with a flare in each corner. If possible, the flares should be anchored to prevent them from being blown about by the helicopter rotor-wash. At night, vehicles can be used in conjunction with the flares to light the landing zone. Use low beam headlights only. Emergency vehicles may have blue lights in operation until it is obvious that the helicopter has found the scene. Prior to landing, those vehicles directly adjacent to the landing area should have their blue emergency lights turned off to avoid blinding the flight crew. Spotlights should never be directed at the helicopter. If it appears that the crew is having difficulty locating the scene, a flashlight may be used to attract the pilots attention.

        (6)    Scene Control: No person or vehicle is permitted within 50 feet of the helicopter, unless specifically directed by the helicopter crewmember.

| 601<br>PATROL<br>PROCEDURES | Manassas Park Police<br>General Orders | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 7 of 10 |

(7)     When directed to approach the helicopter, personnel must do so only from the front of the aircraft. Under no circumstances should anyone approach the tail area or cross from side to side, under the tail boom. Personnel approaching the aircraft should continue to observe the pilot for any additional instructions that may be conveyed.

(8)     Unless personnel are otherwise directed, the flight officer is responsible for opening and closing the aircraft doors.

c.     Officers communicating with helicopters over the police radio system should identify themselves and their locations clearly.

d.     The use of helicopters is to be noted in the Incident Based Report, and/or on the supervisor's daily activity report.

I.     Assisting Neighboring Jurisdictions.

    1.     Officers may respond to assist adjoining jurisdictions upon the approval of the Duty Supervisor, which should be based upon:

       a.     Availability of personnel

       b.     Distance from the city.

       c.     Seriousness of the occurrence.

    2.     Incidents in which the Department may provide immediate assistance to neighboring jurisdictions include:

       a.     Officer in trouble (Signal-1 and/or Signal -13 (Replaced Code).

       b.     Felonies in progress.

       c.     Fights.

       d.     Accident with injury.

       e.     Local lookouts.

       f.     Assist with traffic.

       g.     Upon request of the jurisdiction's chief law-enforcement officer or designee under Mutual Aid Agreements. See General Order 111.

J.     Automobile patrol.

    1.     Automobile patrol is the method of patrol most frequently utilized by the Department. Police vehicles are conspicuous symbols of authority on the streets and observed by many. Each officer is responsible for maintaining a visible example of good driving behavior and habits while on patrol. The effectiveness of patrol depends upon the following factors:

       a.     How frequently the patrol area is covered.

       b.     How efficiently the patrol area is covered.

       c.     How many people observe the patrol.

       d.     How many people along the patrol area are personally contacted.

    2.     A good patrol officer must discover hazardous conditions, detect and investigate the unusual conduct of persons and get to know the habits and idiosyncrasies of citizens in each patrol area.

    3.     Some essentials to consider relative to the manner of patrolling include:

       a.     Be conspicuous in public. However, periodically observe what is going on from an inconspicuous place.

       b.     Zigzag through the patrol area starting at one corner and working to the

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 8 of 10 |

       opposite corner and vice versa.

    c.   Cloverleaf or cross work the patrol area in the shape the name implies.

    d.   Avoid favoring major arteries and patrol those areas criminals may seek for concealment.

    e.   Retrace routes.

4.   At night and during non-business hours, special attention should be directed to premises security:

    a.   Be aware of the regular routine of the business persons in your patrol area.

    b.   Learn the opening and closing times of business places in your patrol area.

    c.   Get out of the vehicle and get to know people.

    d.   Be aggressive and thorough while on patrol.

    e.   Do not hesitate to investigate incidents, actions or circumstances that appear out of the ordinary.

5.   Stationary vehicle activities.

    a.   Often officers are required to remain stationary while patrolling in a police vehicle. Such times include traffic monitoring assignments, times when the officer is completing paperwork, conducting selective enforcement or performing other administrative tasks.

K.   Bicycle patrol.

1.   Officers assigned to the Bicycle Section (on a part-time basis) and selected patrol officers; conduct bicycle patrol when and where it is more effective than patrol by automobile or foot.

2.   See General Order 626 for bicycle operations.

L.   Foot patrol.

1.   Officers are assigned to specific foot patrol area at the discretion of the Chief of Police or designee. Foot patrol locations and times are chosen based on the following factors:

    a.   The concentration of business places and commercial establishments.

    b.   The patterns of criminal activity in the area.

    c.   The number of patrol officers available for assignment.

M.   Meal breaks.

1.   Officers are allowed 30 minutes for meals during each tour of duty. Other refreshment breaks are scheduled at the discretion of the Duty Supervisor when demands for police service allow.

2.   Lieutenants and/or Sergeants ensure an equitable rotation of meal breaks occur within the tour of duty. No more than two vehicles should be placed out of service at one time or at the same restaurant or other location at any given time, unless with the approval of a supervisor.

3.   The appearance of multiple police vehicles (whether they are from the same law enforcement agency or not) parked at one restaurant or other meal break location creates a negative public image. Therefore, officers should be mindful of this situation, and plan meal break locations accordingly.

4.   Officers are not entitled to overtime compensation for meals or breaks missed. Officers are subject to calls during meals or breaks and must monitor their portable radios.

N.   Building search.

1.   When officers are engaged in the search of a building in circumstances that present the

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 9 of 10 |

potential for the presence of persons who are unlawfully present, they should:

    a.    Coordinate their activity so that if a need arose to return fire, there is a reduced potential for endangering other innocent persons present.

    b.    Use all appropriate techniques and devices to maximize the potential for apprehension of any suspects and minimize the hazard to officers or other innocent persons.

    c.    Keep the ECC advised of all activities and consider:

        (1)    Requesting the radio frequency be cleared ("10-3") of other traffic during the search.

        (2)    Requesting assignment to an alternate radio frequency during the search.

    d.    Utilize the standard Site Numbering System; in order to clearly communicate locations and observation to other officers and communications. The proper numbering assignments are.

        (1)    Side 1: Always the side of the building that has the main entrance, or the front of the building.

        (2)    Side 2: When facing Side 1, the front of the building, Side 2 is the side to the left of Side 1.

        (3)    Side 3: Always the back of the building, or the opposite of Side 1.

        (4)    Side 4: When facing Side 1, the front of the building, Side 4 is the side to the right of Side 1.

2.    Plain-clothes officers should not be used for a building search as long as there are uniformed officers available. If they must be used, all officers on the scene are made aware of their presence.

    a.    Coordinate their activity toward establishment of a perimeter.

    b.    Establish remote (such as telephone) contact with person(s) inside, if appropriate.

    c.    Notify the Duty Supervisor and assisting agency (Mutual Aid), as appropriate.

    d.    Maintain covered positions to the extent possible.

O.    Law enforcement officer identification signal, to identify plainclothes/off-duty/undercover officers.

1.    Plainclothes/undercover officers should make their presence and non-uniformed status known to the appropriate ECC prior to arrival on the scene, whether in this jurisdiction or elsewhere.

2.    Officers who are not in uniform, whether in their jurisdiction or elsewhere, are often not readily identifiable to responding uniformed officers as law enforcement personnel. Tragic cases of "friendly fire" casualties have sometimes resulted when responding uniformed officers mistakenly conclude that a plainclothes/off-duty/undercover officer is an armed offender. These cases are more likely when off-duty officers intervene in a crime in progress and take a police action prior to the arrival of on-duty uniformed officers.

    a.    Reflective "POLICE" Armbands

        (1)    The armband is made of bright yellow material with "POLICE" inscribed in large reflective lettering.

| 601<br>PATROL<br>PROCEDURES | **Manassas Park Police**<br>**General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 10 of<br>10 |

      (a)    The armband will be worn over the left bicep and should be done prior to taking any police action, if practical or available.

      (b)    The armband should be kept in the officer's assigned vehicle or personal vehicle, whichever applies.

  (2)    Department issued armbands shall be used at the scene of an incident to assist in the identification of plainclothes officers or non-uniformed officers to other responding officers or civilians.

  (3)    The armband shall be used when plainclothes officers become involved in a situation where officer identification is likely to be a problem as in large incidents or where multiple jurisdictions may be involved.

  (4)    When responding to a crime scene or incident in which the possibility of danger exists.

  (5)    Responding to a scene or acting in a law enforcement capacity outside the City of Manassas Park.

  (6)    Responding to a scene at night when visibility is limited.

  (7)    Any time the plainclothes officer feels that other officers may not easily recognize him/her by sight.

3.    Many law enforcement agencies have adopted a simple physical "signal" to be used by plainclothes/off-duty/undercover officers who may not be known to responding uniformed officers.

4.    When confronted by uniformed officers, the plainclothes/off-duty/undercover officer should:

  a.    If possible, not display a weapon to responding uniformed officers (or holster the weapon prior to their arrival) until his identity has been established.

  b.    Never assume that responding uniformed officers will recognize him as a law enforcement officer, even in his own jurisdiction.

  c.    Perform the law enforcement officer identification signal, by placing both arms over his head and cross the wrists in an "X" gesture, with no objects in their hands. In the event that responding officers are not familiar with the signal displaying empty hands is still a wise course of action.

  d.    Maintain this position until receiving instructions from uniformed officers, and cooperate with them.

    (1)    Do not make sudden movements, such as reaching for police credentials, as this may be interpreted as reaching for a weapon.

    (2)    Some offenders are aware of the law enforcement officer identification signal, and may use it in order to launch an attack on responding officers. For this reason, responding officers may regard the plainclothes/off-duty/undercover officer as an offender until such time their identity is positively established.

| 602 Reporting Procedures | Manassas Park Police General Orders | Version: 1 |
|---|---|---|
| Effective Date: 03/11/2018 | By Authority of: John C. Evans, Chief of Police | Page 1 of 3 |

**PURPOSE:**

To limit instances when a written Incident Based Report (IBR) is necessary, so officers are more available for proactive patrol duties.

**POLICY:**

Officers are obligated to report accurately all details of crimes, violations, incidents, or other information of Department concern that may come to their attention, in accordance with this directive. Through the MDT, all CAD entries shall be completed by both ECS and police personnel outlining appropriate information regarding each call for service and action taken.

**DISCUSSION:**

The "No Report" classification reduces the need for preparing time consuming reports on certain activities. The success of the IBR system depends upon responding officer's judicious application of this procedure and their completeness in note taking.

**PROCEDURE:**

I.      **Situations That Require an IBR**

    A.      An IBR must be initiated:

        1.      When a Group A reportable offense, as defined by IBR guidelines, has been committed.

        2.      When an arrest is made subsequent to a complaint (with the exception of warrant services and Group B offenses).

        3.      When further investigation or referral may be necessary.

        4.      When facts of the current incident may be helpful in another investigation.

        5.      When there is any indication that the incident may tend to embarrass the Department, or lead to litigation.

        6.      When the incident provides additional or supplemental information to a previous case.

        7.      When there is any doubt as to whether the incident requires a written report.

        8.      When the nature of the incident or the persons involved in the incident, may be of interest to the Department, other City officials, other criminal justice agencies or the media.

        9.      Whenever there is an incident, in which the venue is in question.

    B.      Upon completion of an assignment requiring an IBR, the officer advises the Emergency Communications Center (ECC) of the need to write an IBR with the notification, "Report," or other appropriate announcement. The Emergency Communications Specialist (ECS) should respond, when requested with the appropriate unique case number and time. The report should be completed during unassigned time.

    C.      The IBR form is the basic report form for a case report. The IBR is completed in accordance with the Department Paperwork Procedures and Policy.

    D.      Preliminary reports are due by the completion of the tour of duty in which an incident occurs, unless the supervisor authorizes an extension.

II.     **Situations That Do Not Require an IBR**

    A.      An IBR is not required when:

        1.      The incident complained of was completed, and those involved are no longer present by the time of the officer's arrival and the incident reasonably requires no further investigation. The appropriate notification to ECC is "GOA" Gone on Arrival.

        2.      The incident complained of, although constituting a minor offense or traffic violation,

| 602<br>Reporting<br>Procedures | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 2 of 3 |

requires that the victim initiate any further prosecution, without police assistance, and the suspects identity, information and location is known to the victim. The appropriate notification to ECC is: "Warrants Advised."

    a.    In these cases, officers, should ensure that they received all necessary information regarding the suspect for obtaining a warrant, in their field notes.

    b.    Officers advise the complainant that, should he/she later desire to obtain a warrant, he/she may contact the officer for assistance.

    c.    The Assistant Chief, Captain or designee may or may not request a written incident report.

3.    The event complained of, although constituting a minor offense or traffic violation is corrected with a warning or summons issued by the officer. The appropriate notification to ECC is: "Summons Issued," or "Warning Issued."

4.    A burglary or robbery alarm is found to be false. The appropriate notification to ECC is:

    a.    "Alarm Malfunction": The alarm was caused by mechanical or electronic failure of the system.

    b.    "Employee Error": inadequate training, accident or human failure caused the alarm.

    c.    "Weather": The alarm appears to have been caused by electrical storms or severe weather.

    d.    "Excused": The alarm was caused by circumstances beyond the control of the alarm's owner, i.e., power failure, wildlife entering motion detectors, etc.

    e.    When in doubt, weight should be given to the "Excused" category.

5.    The officer performs a service in assisting a citizen that requires no exercise of police authority. The appropriate notification to ECC is: "Closed Service."

6.    The incident complained of is civil in nature, and requires no police action other than mediation. The appropriate notification to ECC is: "Civil Case/Closed Service."

7.    The officer responds to a traffic accident, and finds it is non-reportable under the provisions of General Order 807. The appropriate notification to ECC is: "Non-Reportable/Closed service."

8.    The incident complained of did not occur. The appropriate notification to ECC is: "Unfounded/Closed Service."

9.    The incident complained of does not constitute a violation, and reasonably requires no further investigation. The appropriate notification to ECC is: "No Violation/Closed Service,"

10.    The complainant advises the ECS that he requests that the complaint be cancelled. The appropriate ECS notification to the officer is: "Complaint Cancelled/Closed Service,"

    a.    Depending on the nature of the complaint, the ECS, ECS Supervisor, or any sworn supervisor may decide to investigate the complaint in the normal manner despite the apparent wishes of the complainant. Examples of such complaints include, but are not limited to:

        (1)    Complaints that would constitute felony crimes.

        (2)    Complaints where the safety of persons may be in question.

B.    In the event that a case does not require an IBR, but the circumstances of the case reasonably indicate that a written record is necessary, the appropriate notation in the "Offense Name" block on the IBR reporting computer, and the ECC notification is always "Police Information/Service." Examples of such situations include, but are not limited to:

1.    Suspicious persons/events cases.

2.    Situations that may pose a risk of litigation for the Department.

| 602<br>Reporting<br>Procedures | **Manassas Park Police<br>General Orders** | Version: 1 |
|---|---|---|
| Effective Date:<br>03/11/2018 | By Authority of:<br>John C. Evans, Chief of Police | Page 3 of 3 |

    C.      Upon completion of an assignment where an IBR is unnecessary, the officer advises the ECS: "In-Service," and includes one of the responses listed in Section A, above. No other radio response should be necessary. Officers should make a CAD entry listing action taken and specific information concerning the call for service on every incident.

**III.**    **Audit**

    A.      In order to maintain integrity of the Reporting Procedures system, the Chief of Police may order a periodic audit of cases. The audit contains a critical analysis of the use of the no report classification over a specified period.

    B.      Officers should have adequate information and justification of a no report classification in their field notes concerning cases assigned to them. Officers should retain field notes for a minimum of one year.